MARY F. WRIGHT *et al. v.* JAMES HURST *et al.*

(*Nashville.* December Term, 1909).

1. **ADVERSE POSSESSION.** . Under a junior grant on an inter-
   lap for seven years perfects title.

   There is no doubt that, from the case of Napier v. Simpson, 1
   Tenn., 453, down to Byrd v. Phillips, 120 Tenn., 14, an adverse
   holding, under a junior grant upon an interlap, for the term of
   seven years, gave the occupant a fee under the first section of
   Acts 1819, ch. 28, and it was not the purpose of the court, in the
   Bleidorn Case (89 Tenn., 166, 204), to modify this rule. (*Post,*
   *pp.* 662, 663.)

   Acts cited and construed: Acts 1819, ch. 28, sec. 1.

   Cases cited and approved: Napier v. Simpson, 1 Tenn., 453; Byrd
   v. Phillips, 120 Tenn., 14; and approving intermediate cases.

   Case cited and distinguished: Bleidorn v.. Pilot Mountain Coal &
   Mining Co., 89 Tenn., 166, 204.

2. **SAME.** On land excluded by the grant from its operation is
   not under color of title, when.

   Where the State's grant includes within its boundaries, but ex-
   cludes from its operation, all older and superior claims, it is not
   operative as color of title to the land so included and excluded,
   and sufficiently identified and located within the grant, and
   shown to be covered by older and superior title, and possession
   of part or all of such included and excluded land is not a pos-
   session under color of title. (*Post, pp.* 664, 665.)

   Acts cited and construed: Acts 1819, ch. 28, sec. 1.

   Case cited and distinguished: Bleidorn v. Pilot Mountain Coal &
   Mining Co., 89 Tenn., 166, 204.

Wright v. Hurst.

**3. SAME. Same. Grant "platting out 600 acres prior claims"** is not color of title to such excluded land shown to be held by superior title.

Where the State's grant undertakes, by its terms, to vest in the grantee all the land embraced in its descriptive clause, "platting out 600 acres prior claims," a possession affirmatively or otherwise shown to be on the 600 acres of excluded land held by superior title, identified and located, is not a possession under color of title by virtue of such grant. (*Post, pp.* 661, 665, 666.)

Acts cited and construed: Acts 1819, ch. 28, sec. 1.

Case cited and distinguished: Bleidorn v. Pilot Mountain Coal & Mining Co., 89 Tenn., 166, 204.

**4. SAME. Same. Same. Grant for about 2,800 acres covered** entirely by superior titles, "platting out 600 acres prior claims" is color of title to all, excepting the 600 acres, and to that also unless identified and located.

Where the State's grant embraces about 2,800 acres of land covered entirely by older and superior grants, and undertakes, by its terms, to vest in the grantee all the land embraced in its descriptive clause, "platting out 600 acres prior claims," and it is not shown that the adverse possession under the grant is on the 600 acres so excluded, the words of exclusion cannot have the legal effect of destroying the grant a color of title, because the land is covered entirely by older and superior grants; and as to so much of the land so granted as lies outside of the 600 acres, identified and located, the grant is color of title, and if the 600 acres is not identified and located within the grant, the grant is color of title to that also. (*Post, pp.* 661, 665, 666, 669.)

Acts cited and construed: Acts 1819, ch. 28, sec. 1.

Case cited and distinguished: Bleidorn v. Pilot Mountain Coal & Mining Co., 89 Tenn., 166, 204.

122 Tenn—42

Wright v. Hurst.

5. **BOUNDARIES. Call for course, or distance between two points, means a straight line, unless there is a clear intimation to the contrary.**

Where the State's grant calls for a course, or distance between two points, it will be presumed that the State and the enterer and grantee intended a straight line, unless there is a clear intimation to the contrary. (*Post, pp.* 667, 668.)

Case cited, approved, and distinguished: Burns v. Greaves, Cooke, 75.

6. **SAME. Same. Call with meanders of a stream, for a certain distance, "when reduced to a straight line," means that distance on a straight line.**

A call in a grant, from a given point on a creek, "east with the various meanders of said creek, in all 800 poles, when reduced to a straight line, to a stake on said creek," the distance this line lay along the creek, on a straight line, was 800 poles. This locative call was the south boundary line of the land granted; and whatever ambiguity there might be in this call, if any, is removed by the fact the north boundary line of the grant, corresponding in length with it, is a straight line 800 poles long. (*Post, pp.* 661, 666-668.)

Case cited, approved, and distinguished: Burns v. Greaves, Cooke, 75.

7. **LAND LAWS. State's grant for certain land, "platting out 600 acres prior claims," and determination of what lands are and what are not embraced in the 600 acres.**

Where the State's grant undertakes, by its terms, to vest in the grantee, all the land (about 2,800 acres altogether) embraced in its descriptive clause, "platting out 600 acres prior claims," and it appears that the State had issued three prior grants, which, interlapping, covered the said entire tract of about 2,800 acres, the court cannot determine that any of said prior grants or which of them legally embrace the 600 acres to be platted out,

Wright v. Hurst.

or any particular part thereof; but where it appears that a part of a prior grant for 100 acres, issued before the said three grants, lies within the limits of the said later grant for about 2,800 acres, the court determines and adjudges that this is one of the tracts which made up the 600 acres of prior claims to be platted out. (*Post, pp.* 661, 665, 666, 669.)

8. **REMANDMENT.** To ascertain what part of prior grant lies within a later grant "platting out . . . prior claims," when.

Where the State's grant is for certain land, "platting out 600 acres prior claims," and it not being clear how much of a certain 100 acre tract granted by a prior grant and constituting one of the tracts making up the 600 acres of prior claims to be platted out, lies within the said later grant, the case may be remanded to ascertain the facts, and for a decree founded thereon. (*Post, pp.* 661, 669).

9. **LAND LAWS.** Grant issued upon a special entry relates to the date of the entry.

A grant of the State issued upon a special entry relates to the date of the entry, and prevails over a prior grant issued after the date of such entry. (*Post, pp.* 669, 670.)

10. **ADVERSE POSSESSION.** Under younger grant on its interlap with an elder grant perfects title under younger grant, when.

The grantee's adverse possession under a younger grant on its interlap with an elder grant, for seven years, is effectual to create a fee in the possessor, which will descend to his heirs. (*Post, pp.* 661, 662, 670.)

11. **SAME.** Under younger grant, but not within interlap with older grant, does not toll or affect the title of the older grant.

The grantee's adverse possession, for seven years, under a younger grant, upon some part of the land, but not within the interlap with an older grant, does not perfect the title of the possessor so as to entitle him or his heirs to recover the land embraced

Wright v. Hurst.

in the older grant and lying within the younger grant. (*Post,* pp. 662, 670.)

Case cited and approved: Elliott v. Coal & Coke Co.. 109 Tenn., 745.

---

## FROM FENTRESS.

---

Appeal from the Chancery Court of Fentress County. —D. L. LANSDEN, Chancellor.

SMITH & SMITH and CONATSER & CASE, for complainants.

MCNUTT & WHEELER, for defendants.

---

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The complainants, alleging that, with the defendant James L. Williams, they are heirs of John Williams, deceased, file the present bill to remove clouds upon the title to a tract of land described therein, to eject the defendants from the possession, and also for partition of the same. They deraign title to a grant to their ancestor, John Williams, issued by the State on the 25th day of August, 1849, which is in these words: "Commencing at a black oak tree about 70 yards north of the road leading from Jamestown to R. Rains, and

about 300 yards north of said creek; running south 80 degrees east, 82 poles, to White Oak creek, and east with the various meanders of said creek, in all 800 poles, when reduced to a straight line, to a stake on said creek; thence north, 520 poles, to a stake; thence west, 800 poles, to a small white oak, about 10 poles east of a branch of Bee creek; thence south, crossing said branch at 18 poles, in all 520 poles, to the beginning, platting out 600 acres prior claims."

Various defenses were interposed by the several defendants. Among them were the following: First, that prior in date to the Williams grant, the State had issued three different grants, to wit, Nos. 6,420, 4,719, and 6,398, which, interlapping, covered the entire tract embraced in that to Williams, and, this being so, as a matter of law his grant was not color of title under the first section of the act of 1819 (Acts 1819, c. 28); second, that, upon a proper survey of his grant, Williams' possession was outside its limits; third, that Mary F. Wright, one of the complainants, had conveyed a part of the tract now claimed by her; and, fourth, adverse holding on grant 4,719.

The case was tried by the chancellor, sitting as a jury, and he found as facts that complainants' grant was located with reasonable certainty by a survey of one P. H. Smith, which is made a part of the record, and that John Williams, the grantee, was in possession of a part of the tract within the boundaries of his grant for more than seven years after the issuance of the grant

to him claiming under the same. Upon this finding he held as a matter of law that Williams' title was perfected into a fee, which descended to his heirs, and that complainants, as such, could maintain their bill, save in certain respects.

The chancellor, while finding the facts with the contention of defendants as to the covering of the Williams grant by the prior and interlapping grants referred to, yet held that the adverse possession of the grantee Williams for seven years on the interlap of his grant with grant 6,420 was under color of title. He found as a matter of fact and law that the second of the above defenses was not well taken, that the third was maintained, and the fourth he declined to rule on. All parties have appealed.

For the defendants it is insisted that the case of *Bleidorn* v. *Pilot Mountain Coal & Mining Co.*, 89 Tenn., 166, 204, 15 S. W., 737, has settled the rule in this State that a junior grant, with words of exclusion such as are found in that of Williams, is not color of title, converting into a fee an adverse holding of seven years. There is no doubt that from *Napier* v. *Simpson*, 1 Tenn., 453, down to *Byrd* v. *Phillips*, 120 Tenn., 14, 111 S. W., 1109, adverse holding under a junior grant upon an interlap for the term of seven years gave the occupant a fee under the first section of the act of 1819, and it was not the purpose of the court, in the Bleidorn Case, to modify this rule. All the court did was to hold that under the facts of that case this rule did not apply. We

think an examination of the opinion of the court removes all doubt in the matter.

The title set up by the Bleidorn heirs originated in three entries, numbered, respectively, 1,942, 1,949, and 1,950. The contest over entry 1,949 was chiefly with the Pilot Mountain Coal & Mining Company, which relied upon certain entries and grants as superior outstanding titles. Among these were entry 1,727, grant 22,339, to Julian F. Scott, for 5,000 acres, and entry 1,925, grant 22,329, to Hannah M. Byrd, for 5,000 acres. One of the questions was: Had the statute of limitations barred a recovery of the land covered by entry 1,727? This was answered in the original opinion in the affirmative; the court finding that what is called in the record "Scarborough possession No. 2" was begun as early as 1846 or 1847 under Julian F. Scott, the grantee under entry 1,727, continuing adversely for seven years, and this operated to bar complainants' claim. Complainants filed a petition for rehearing, calling attention to the fact that the possession was within entry 1,925, known as the "Hannah Byrd entry," and this, being a special entry, was excluded from the grant under which they claimed, and this possession was inoperative as an adverse possession within the interlap of 1,727 and 1,949. As to this the court said: "This question was not decided, and attention was not called to it, either in the oral or printed arguments. . . . The grant to Eastland upon entry 1,949 describes the granted land as a certain tract containing 2,500 acres, 'begin-

ning at a stake and pointers, the northeast corner of entry 1,948' (then follows full description), including in the above calls of prior and legal claims 3,088 acres of land." Continuing, it was said: "A calculation will show that the calls include about 5,590 acres, of which only 2,500 acres were granted. . . . The effect of such a grant is to confer upon the grantee a legal title to all the land within the calls of the grant not shown to have been held at the time by a superior title. When, however, it is shown that within the calls there was a superior legal claim by. older special entry, or by an older grant, then the effect of such proof is to exclude such older superior claim from the operation of the grant, and the grant, as to such excluded older claim, is not operative as color of title to the land so included and excluded."

The court further said: "The defendant the Pilot Mountain Coal & Mining Company introduced the entry and grant to Hannah Byrd, and relied upon it as an outstanding paramount title, operating to defeat complainants in so far as it conflicted with complainants' grant. We decided that it was a subsisting paramount title, and as such effective to defeat complainants to the extent of its interlap with 1,949. Another necessary effect of this proof is to exclude the lands so held from the operation of complainants' grant; that is, complainants' grant must be so run as to exclude the older title. The Scarborough possession No. 2 was apparently within the interlap of the three grants; but,

while it was within the entry 1,727, and within the interlap of 1,925 with that entry, yet, being upon an older claim excluded from the grant on [entry] 1,949, it was not in fact within the interlap of 1,727 and 1,949, and was not, therefore, a possession adverse to complainants."

In other words, the court, finding the Hannah Byrd entry to be special and older than entry 1,949, held it within the words of exclusion, and as much outside the terms of the grant as if named, and therefore a possession on it was not adverse to complainants, and the grant based on this entry was not color of title to the defendant. That this was the full extent of this holding, we think, is made clear later on, when discussing the rule of evidence laid down in *Bowman* v. *Bowman*, 3 Head, 47, and *Fowler* v. *Nixon*, 7 Heisk., 719, that it devolved on the defendant who disputes the title of a plaintiff, claiming under a grant excluding older titles without describing them, to show the existence of such older titles, and, stating the reason of the rule, then added: "Here the defendant made such proof, and its legal effect was to defeat complainants by showing a superior outstanding title. But another of the legal effects of such evidence was to entirely exclude this paramount title from the operation of complainants' grant, by force of the excluding words of the grant."

Now, referring to the words of the grant in this case, it is found that the State by its terms undertakes to vest in the grantee all the land embraced in its de-

scriptive clause, "platting out 600 acres prior claims."
If it was affirmatively or otherwise shown that the
Williams possession was within the lands thus ex-
cluded, unquestionably it would not be adverse to the
claimants under the older grant of that number of
acres, nor would the Williams grant be color of title
to such possession.  But this is not shown, and we are
unable to see anything in the record which warrants
the application of the rule in the Bleidorn Case.  Cer-
tainly that case cannot be held as authority for the con-
tention that these words of exclusion have the legal ef-
fect of destroying as color of title a grant of about 2,800
acres, because this same land is covered entirely by
older grants.  As to so much of this land so granted as
is outside 600 acres, the old and well-established rule
already referred to applies.

The chancellor found, as has been stated, that com-
plainants' grant No. 9,946 was located with reasonable
certainty by the survey of P. H. Smith; that the call
for the south end of the west boundary line of the grant,
or, in the words of the grant, "commencing at a black
oak tree about seventy yards north of the road leading
from Jamestown to R. Rains, and about three hundred
yards north of said [White Oak] creek," as fixed in the
survey, was fully warranted by the local conditions
existing at that point.  Following the first call, this
surveyor ran 800 poles on a direct line to a stake.  As
to this the chancellor, in his opinion found in the
record, said: "Having located the west boundary line

of the grant, . . . I think the proper construction of the call on the south boundary line, running from end of the line, 83 poles, southeast to the creek, and with the meanders of White Oak creek in all 800 poles when reduced to a straight line is that the meanders of the creek are to be the south boundary line of the grant, and that the south line of the grant, if straight, would be 800 poles long, corresponding to the north boundary line." This construction of the grant is challenged as being unsound. It is insisted that the survey should follow these meanders, and when, in so doing, a point has been reached 800 poles from the beginning, a stake should be set as the terminal point of the south boundary, and thence north 520 poles to a stake. Running thus, it is insisted the possession of Williams will be outside and east of his boundaries.

There is no doubt, in a case like that of *Burns* v. *Greaves' Lessee,* Cooke, 75, where the entry and grant were of a tract of land "lying on the north side of Duck river, on the first creek above Spring creek, beginning on said river three-quarters of a mile below the mouth of said creek," without anything else to direct, a subsequent enterer would naturally assume that the beginning point was to be found by following the meanders of the river. This was the view entertained by the court in that case, and is the view expressed in a number of cases cited by counsel. But we think there is as little doubt that when a course is called for, or a distance between two points, unless there is a clear in-

timation to the contrary, it is to be inferred that the enterer intended a straight line. This was the opinion expressed by White, J., in the Burns' Case, supra, in the following language: "I entirely agree with the circuit court in the opinion that, when the distance between two given points is to be ascertained, it must be by running a direct line, unless an intimation is given that a crooked line is intended."

We think in this case the intimations clearly indicate that a direct line was intended by both the State and the grantee.

White Oak creek is referred to as a locative call, showing that it was the south boundary of the land granted; but the distance it lay along that creek on a straight line was 800 poles. Whatever ambiguity there might be in this call is removed by the fact that the north line of the grant corresponds in length with it. From the stake, which is the terminal point of the east line as it ran north, this north boundary extends west 800 poles to a white oak about 10 poles east of Bee (evidently Big) creek.

We agree, therefore, with the chancellor that Williams' adverse holding was within the limits of his grant.

The finding by the chancellor, as a fact, that J. M. Wright was in possession of the Mosey Wright, or, as it was sometimes called, the Owens, place, for more than seven years after the Williams possession went down, we think is warranted by the evidence. We, how-

ever, do not think it clear that this possession was under the Clemmons deed to him, dated in 1858. On the 16th of July, 1859, he took a deed from William Pile for 200 acres. After describing this tract, the recital is that it is "the land whereon Mosey Wright now lives, and formerly owned by John A. West." This is, as admitted, the tract granted to John A. West on the 8th of April, 1828, antedating entry No. 496 about two years, and grant 6,420 about ten years.

In view of all the facts, we think the adverse possession of Wright was limited to the boundaries of the West grant, and that the chancellor was, as a matter of law, right in so holding.

The record shows that a part of the 100 acres covered by entry 192, dated June 10, 1829, on which issued grant 2,468, dated June 10, 1829, lies within the limits of grant 9,946. This, we are satisfied, is one of the tracts which made up the 600 acres of prior claims to be platted out. Whatever part of this tract that lies within the Williams grant complainants have no claim to and have no right to recover. As it is not clear how much of this tract does lie within grant 9,946, this case may be remanded to ascertain the facts, and for a decree founded thereon. The remand will also include the order of reference provided for in the chancellor's decree.

We are entirely satisfied with regard to the chancellor's holding that entry 496, on which grant 6,420 issued, was a special entry, and, this being so, the grant

related to its date, and thus was prior in right to grant 4,719. We are further satisfied that the possession of Williams, being on the interlap of 6,420 and 9,946, was effectual in creating a fee in him, which descended to his heirs.

We concur with the chancellor in his opinion that complainants were not entitled to a recovery of any of the land embraced in grant 4,719, as they had no possession within that grant. *Elliott* v. *Cumberland Coal & Coke Co.,* 109 Tenn., 745, 71 S. W., 749.

We also concur in his holding limiting the recovery of Mary F. Wright in this case by the terms of her deed to Blanchard and others, and also that complainants under their bill are not entitled to a decree, save for their respective interests in the property sued for.

The chancellor's decree is affirmed, except in the respect indicated herein. The costs of appeal will be paid as follows: One-third by complainants, one-third by Cumberland Coal & Coke Company and the Mississippi Valley Insurance Company, and the remaining one-third will be paid by the other defendants named in the bill.