GEORGE KOBBE *v.* HARRIMAN LAND COMPANY *et al.*

(*Knoxville.* September Term, 1917.)

1. **VENDOR AND PURCHASER. Notice. Registration of deeds.**
   Registration of a deed in M. county at a time when land conveyed thereby was no longer a part of such county was wholly ineffective to give notice. (*Post, pp.* 261, 262.)

2. **VENDOR AND PURCHASER. Prior deeds. Duty to make inquiry.**
   Under Thompson's Shannon's Code, section 3749-3750, providing that instruments required to be registered give notice to third persons not having actual notice only from the noting thereof for registration on register's books; section 3751, providing that in case of rival instruments, the instrument first registered or noted for registration shall have preference over one of earlier date not noted for registration, and section 3752, providing that any of said instruments not so proved or acknowledged and registered or noted for registration shall be null and void as to existing and subsequent creditors of or *bona-fide* purchases from the makers without notice, purchaser claiming under deed containing clause excluding older and better titles would not be onerated with the duty of making inquiry or investigation for prior conveyances outside of and beyond the registration books provided by law, in the absence of actual notice, being purchasers the same as purchasers under deeds not containing such clauses and their instruments, deeds just the same. (*Post, pp.* 262-264.)

   Case cited and distinguished: Wilkins v. McCorkle, 112 Tenn., 688.

   Code cited and construed: Secs. 3749-3752 (T.-S.).

3. **VENDOR AND PURCHASER.  Duty of purchaser to make inquiry.  Unrecorded deeds.**
   It is the duty of one who purchases directly under a deed containing a clause, excluding older and better titles, to explore the land

for adverse possessions, and to search the public records for prior instruments affecting the title. (*Post, pp.* 264-267.)

4. **VENDOR AND PURCHASER.** Knowledge of prior conveyances. Presumption.

A purchaser under a deed containing an exclusion clause is conclusively presumed to know whatever could have been discovered from the public records or from an investigation for adverse possessions. (*Post, pp.* 264-267.)

5. **VENDOR AND PURCHASER.** Actual notice of unrecorded deed. Burden of proof.

The burden of showing that a purchaser under a deed containing an exclusion clause had actual notice of a prior unrecorded deed was on the party asserting such fact. (*Post, pp.* 264-267.)

6. **VENDOR AND PURCHASER.** Exclusion clause. Right of purchaser.

In the absence of actual notice or notice by record or registration books or by actual adverse occupation of the land, the purchaser, notwithstanding an exclusion clause in a deed in his chain of title, has the right to rest in security. (*Post, pp.* 264-267.)

Acts cited and construed: Acts 1895, ch. 38.

Cases cited and approved: Iron and Coal Co. v. Schwoon, 124 Tenn., 209; Bowman v. Bowman, 40 Tenn., 48; Fowler v. Nixon, 54 Tenn., 719; Bleidorn v. Pilot Mt., etc., Co., 89 Tenn., 204; Wright v. Hurst, 122 Tenn., 656; Campbell v. Ice & Coal Co., 126 Tenn., 530.

7. **VENDOR AND PURCHASER.** Unrecorded deed. Rights of purchaser.

An unregistered deed, though good between the immediate parties, is incomplete in law, and incapable of conveying the title as against subsequent purchasers not shown to have had actual notice. (*Post, pp.* 267-271.)

8. **VENDOR AND PURCHASER.** Notice. Subsequent recording. Effect.

Recording a deed after the land has been conveyed by a registered deed to a *bona-fide* purchaser is without efficacy. (*Post, pp.* 267-271.)

Kobbe v. Harriman Land Co.

9. **VENDOR AND PURCHASER.** Notice. Records of old county. Duty to search.

An immediate purchaser from one having deed containing clause excluding older and better titles would not be bound to search records of M. county after the land embraced by the deed had been transferred by the legislature to a new county. (*Post, pp.* 267-271.)

Cases cited and approved: Perkins v. Hays, 3 Tenn., 163; Land Co v. Hilton, 121 Tenn., 308.

10. **DEEDS.** Property conveyed. Exclusion clause.

In the absence of a description of the excluded land in the deed itself a deed, notwithstanding a clause excluding older and better titles, conveys all that it describes. (*Post, pp.* 267-271.)

Cases cited and approved: Bowman v. Bowman, 40 Tenn., 48; Fowler v. Nixon, 54 Tenn., 719; Bleidorn v. Pilot Mountain, etc., Co., 89 Tenn., 204; Iron & Coal Co. v. Schwoon, 124 Tenn., 209; East Tenn. Coal Co. v. Taylor, 131 Tenn., 11; Brier Hill Collieries Co. v. Gernt, 131 Tenn., 542; Northcut v. Church, 135 Tenn., 541.

11. **VENDOR AND PURCHASER.** Rights as against inferior title.

As in a proceeding in which the land in question was attached and sold as the property of K. only such title as was possessed by him could be passed by decree, notice from recording of such decree would be ineffectual as to parties claiming under a deed superior to K.'s. (*Post, pp.* 271-273.)

12. **COURTS.** Rule of stare decisis. Unreported opinion.

An unreported opinion, affirming an erroneous decision of the chancellor without opinion, will not be followed under the rule of *stare decisis.* (*Post, pp.* 273-274.)

Cases cited and approved: Randolph v. Merchants' National Bank, 77 Tenn., 69; Isham v. Sienknecht, 59 S. W., 779; Reynolds v. Stockton, 140 U. S., 254; Wilkins v. Railroad, 110 Tenn., 442.

13. **ESTOPPEL.** By pleading. Mutuality.

Where neither complainant nor his predecessors in title were connected with a litigation against defendant's predecessor or had any knowledge of allegations in pleadings therein, there could be no estoppel in favor of complainant by reason of al-

legations against defendant or its predecessor; there being no mutuality as a basis therefor, and no privity between complainant and defendant's predecessor. (*Post, pp.* 274-279.)

Cases cited and approved: Tate v. Tate, 126 Tenn., 169; Ross v. Cobb, 17 Tenn., 469; Singleton v. Ake, 22 Tenn., 626.

14. **VENDOR AND PURCHASER.** Rights as against unrecorded deed. That defendant's predecessor in title was an attorney for G., the common source of title, would not prevent him from lawfully acquiring the title of a grantee having a prior registered deed, even though he had knowledge of an unrecorded deed from G. (*Post, pp.* 279-281.)

FROM CUMBERLAND.

Appeal from the Chancery Court of Cumberland County.—A. H. ROBERTS, Chancellor.

JOHN M. DAVIS, CASSELL & HARRIS and JAMES A. MONROE, for appellant.

W. T. SMITH, CLINTON ROE and L. D. SMITH, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This was an ejectment bill filed in the chancery court of Cumberland county to recover about five thousand acres of land. There were voluntary dismissals, however, as to all of the material defendants except the Cumberland Lumber Company, and it claims a much smaller acreage than that just stated,

the exact amount of which it is unnecessary to note. The chancellor dismissed the bill, and the complainant has appealed, and assigned errors.

The facts, so far as it is necessary at this point to relate, are as follows:

The complainant, and the defendant Cumberland Lumber Company, claim from a common source, one George F. Gerding. The land involved was embraced in Morgan county entry No. 1980, on which was issued grant No. 21987, to Thomas B. Eastland, June 30, 1838. This land subsequently by legal conveyances became the property of Gerding. He made four several conveyances of it. Under one of these the complainant Kobbe claims; under two of the others the defendant lumber company. The fourth, the lumber company relies on for the defense of outstanding title, in case its reliance on the two others just mentioned and its defense of adverse possession shall be found unsupported in fact, or not sustained in law.

Complainant's chain of title, starting with the common source, runs as follows: Deed of Gerding to William A. Kobbe dated October 8, 1866, and an attachment proceeding by Gerding against William A. Kobbe in the chancery court of Anderson county, wherein an ancillary attachment was issued to Cumberland county, and this land levied on as the property of Kobbe. The style of that case was, *George F. Gerding* v. *William A. Kobbe and Others,* and *William A. Kobbe* v. *George F. Gerding and Others.* The latter was a cross-bill, which was voluntarily

dismissed by Kobbe. The case then went to a hearing at the May term, 1872, of the Anderson chancery court on the original bill and the answer thereto, whereupon a judgment was rendered in favor of Gerding and against Kobbe for $69,000, and a decree was entered ordering the land to be sold for the payment of this judgment. A report of sale was made by the commissioner, showing that the land had been purchased by Mrs. Sarah Lord Kobbe, and the decree of confirmation recited that the complainant George F. Gerding had assigned his judgment against William A. Kobbe to the purchaser, Sarah Lord Kobbe, and it was directed that her bid should be held satisfied by payment of the costs and commissions. In confirming this sale the decree not only purported to divest title out of the defendant, William A. Kobbe, and to vest it in Sarah Lord Kobbe, but also purported to do the same in respect of Gerding, the complainant in that case. This decree was registered in Cumberland county July 3, 1873. Sarah Lord Kobbe made a deed of this land to complainant, George C. Kobbe, December 16, 1884, which was registered in Cumberland county November 17, 1887. She and her husband had previously, February 5, 1880, made a deed to George C. Kobbe for this same land. This deed was registered in Cumberland county August 25, 1916.

George F. Gerding had become owner of the land by deed from one Henry Wells of date January 27, 1844, which was recorded in the register's office of

Morgan county, where the land then lay, on April 10, 1844.

When Cumberland county was created in 1855, this land was included within the bounds of the new county. This new county, so created in 1855 by an act of the legislature, was organized, and the register's books opened on the first Monday in April, 1856.

The deed, above mentioned, which George F. Gerding made to William A. Kobbe on October 8, 1866, and which was the foundation of the attachment proceedings in Anderson county already mentioned, was never registered in Cumberland county.

The defendant traces its title to two deeds made by George F. Gerding, each the beginning link in separate chains of title, which finally united in one of defendant's predecessors in title before defendant obtained its own deed. The first of these chains begins with a deed made by George F. Gerding to D. F. Wilkin on February 6, 1856, acknowledged in due form February 16, 1856, and regularly registered in the register's office of Morgan county, the land then being a part of Morgan county, on the same day, February 16, 1856. The defendant deraigns title through a regular succession of conveyances from this deed. The complainant has no claim on and no connection with this chain of conveyances.

The second deed made by Gerding was executed on June 12, 1856, to Samuel C. Roberts, the land then being a part of Cumberland county. This deed was probated before the clerk of the county court of

139 Tenn.—17

Morgan county May 10, 1873. It was recorded in the register's office of Morgan county May 10, 1873, and in the register's office of Cumberland county August 12, 1873. The defendant connects itself with this deed by a regular sequence of conveyances. The complainant makes no claim on and has no connection · with this chain of title.

The third deed made by Gerding was made to one Charles B. Slausson, and was dated on its face December 18, 1855, but it is contended by complainant that this deed was antedated, and that the real, or true, date was June 14, 1856. This deed was recorded in Morgan county on October 9, 1856, and in Cumberland county January 19, 1915. Neither complainant nor defendant claim any connection with this deed, and, if any title arises out of it, such title can operate only as an outstanding one.

The fourth conveyance made by Gerding was the one which we have already mentioned in setting out complainant's chain of title, the deed of October 8, 1866, to William A. Kobbe.

On the facts so far stated it is evident, no other facts appearing, that defendant has the elder, and therefore the true, title of Gerding, under the chain beginning with the deed of Gerding to D. F. Wilkin of date February 6, 1856. But defendant's claim thereunder is attacked by evidence which shows that Gerding's deed to Wilkin, after setting forth as conveyed therein a list of some twenty different entries and grants, estimated to contain about 52,100.

acres, and, among the tracts, the land in controversy, entry No. 1980 in the name of William G. Sims, grant No. 21987 for 5,000 acres dated June 30, 1838, contains an exclusion clause in these words:

"In all about 52,100 acres, more or less and excluding all older and better titles—including those tracts already deeded by said Wilkin as my attorney."

As already stated, there was a deed executed by Gerding to Slausson for the same land, which, on its face was dated December 18, 1855. This deed was executed through Wilkin as attorney in fact for Gerding. It was followed by a deed made, on the 15th of October, 1856, by Gerding and Wilkin. This deed, after reciting that the parties just named "did, on or about the 14th day of June, one thousand, eight hundred and fifty-six, convey by deed, containing covenant of full warranty on the part of George F. Gerding and a quitclaim of all the right, title and interest of said Daniel F. Wilkin, to Charles Slausson forty-one thousand and five hundred acres of land in the county of Morgan, in said State of Tennessee, and whereas the said deed was antedated as of date December 18, 1855, in order to cover conveyances of said premises which said Slausson had before made under and by virtue of a former deed for said premises, and whereas the acknowledgment of said deed was antedated by consent of parties," then continued:

"Now, therefore, in consideration of the sum of one dollar, and as a final settlement between parties, we hereby remise, release, quitclaim, and convey all our right, title, and interest, claim or demand of, in, or to all the premises and lands mentioned and described in said deed, hereby ratifying and confirming the same, both as to the date and acknowledgment thereof except," etc; then follows an exception of land not here involved. This deed was registered in Morgan county on February 23, 1859. The deed dated December 18, 1855, was recorded in Morgan county on October 9, 1856. Both were recorded in Cumberland county January 19, 1915. Defendant contends that the recitals of this confirmatory deed, which was introduced by complainant, shows fully that the deed dated December 18, 1855, was really executed on or about June 14, 1856, and was antedated. The defendant also contends that this point is admitted in complainant's pleadings. But complainant contends that the confirmatory deed is subject to the construction that the deed introduced into the record, antedated as above mentioned, was intended to supply a former deed of that date conveying the same land which had been made by Wilkin as attorney in fact for Gerding, or by Gerding directly, and that such former deed truly bore the date of the antedated deed, and had been lost or mislaid; that this said former deed was the deed which was made to cover

conveyances which Slausson had previously made. On the existence of such former supposed lost or mislaid deed, or on the assumption that the deed, now dated December 18, 1855, was truly dated of the latter date, and that the statements in the complainant's bill are mere matters of mistaken construction, and thus matter of law not binding, it is argued for complainant that the exclusion clause in the deed from Gerding to Wilkin became fully operative, and so the land in controversy though described by entry and grant numbers in the said deed of Gerding to Wilkin, was not really conveyed thereby; that is to say, having been previously conveyed by Wilkin as attorney in fact for Gerding to Slausson, it was by the exclusion clause taken out of the conveying words of the said deed.

We shall consider the case on the assumptions stated.

The question must be determined, as we think, under our laws for the registration of deeds. It is to be remembered that the deed to supply which the deed of the apparent date of December 18, 1855, is assumed to have been executed was never registered at all, if there ever was such deed in existence, also that the deed dated December 18, 1855, was never registered even in Morgan county until eight months after the Gerding deed to Wilkin had been executed, and that such registration was at a time when the land in controversy was no longer a part of Morgan county, but was then a part of the new county of

Cumberland, and so the registration in Morgan county of this deed was wholly ineffective; was the same as if it had never been, so far as concerned the matter of notice. It must also be remembered that the Wilkin deed, as already stated (Gerding to Wilkin), was duly registered in Morgan county while the land in question was yet a part of that county.

So the question for discussion at this point is: On reading the exclusion clause in the deed of Gerding to Wilkin, would a purchaser under that chain of title be onerated with the duty of making inquiry or investigation for prior conveyances outside of and beyond the registration books provided by law for the recordation of the deeds and other evidences of title; that is, in the absence of proof of actual notice communicated from some other source, indicating the existence of an unrecorded deed?

This point, as related to exclusion clauses, has not previously arisen in our State, and we are not aware that it has been determined elsewhere.

In our judgment the question stated should be answered in the negative.

In *Wilkins* v. *McCorkle,* 112 Tenn., 688, 696-698, 80 S. W., 834, 835, it is said:

"Under our Code, while instruments that are required to be registered 'have effect between the parties to the same, and their heirs and representatives, without registration,' yet 'as to other persons not having actual notice of them' they have effect

'only from the noting thereof for registration on the books of the register.' Shannon's Code, section 3749. When such instruments are registered, it is provided they 'shall be notice to all the world from the time they are noted for registration,' and they 'shall take effect from said time.' Id. section 3750. In case there are rival instruments, the instrument 'first registered, or noted for registration, shall have preference over one of earlier date, but noted for registration afterwards, unless it is proven in a court of equity, according to the rules of said court, that the party claiming under the subsequent instrument had full notice of the previous instrument.' Id. section 3751. 'Any of said instruments not so proved, or acknowledged, and registered, or noted for registration, shall be null and void as to existing and subsequent creditors of, or *bona-fide* purchasers from, the makers, without notice.' Id. section 3752.

"It is perceived," the opinion continues, "there are five leading propositions embraced in the foregoing sections: (1) That, as between the parties themselves and their heirs and representatives, such instruments take effect, and are good, without regard to registration; (2) that they also take effect and are equally good as to all persons who have actual notice of them from the date of such notice, except creditors; (3) that as to creditors (that is, of the vendor) they are inoperative, ineffective, and practically nonexistent until they are noted for registra-

tion on the books of the register; (4) that as to all
other persons (that is, all not embraced in the
preceding classes) they are equally inoperative, in-
effective, and nonexistent until so noted for registra-
tion; (5) that upon being so 'noted for registration,'
they become at once 'notice to all the world,' and so
effective as to all the world.''

The point is noted in the opinion that some con-
fusion had arisen from the use of the term ''*bona-fide*
purchasers,'' in the Code sections referred to, by
reason of the technical meaning of that expression
as used ordinarily in courts of chancery. Thereupon
prior decisions of the court were cited and approved
as holding, in substance, that the term was not to
be understood in the technical sense mentioned, but
simply as the equivalent of ''purchasers without
notice.''

There is no reason apparent why the foregoing
principles formulated in the sections of the Code,
and repeated and construed in the decisions cited,
should not protect the rights, and indicate the duties
of all purchasers claiming under deeds which contain
exclusion clauses as well as those claiming under
deeds without such clauses. They are purchasers
just the same; their muniments are deeds just the
same. The certainty required for description of the
thing conveyed is equally as important. The only
distinction is that such a clause warns the purchaser
that the vendor or maker of the instrument is not
sure that he has the right to convey all of the land

Kobbe v. Harriman Land Co.

embraced within the description, and that if there be any lands included within the bounds as to whicn there exists an older and better title, the vendor is not to be understood as conveying these, and so shall not be held liable on his warranties in case there shall subsequently be disclosed an older and better title. It is true, we think, that such older and better title may be shown to have been complete, at the date of the deed by proof of adverse possession for the statutory period, under color of title, also by twenty years' adverse possession without color of title, but within defined boundaries, so raising the presumption of a grant; also that the color of title prior to our Act of 1895, chapter 38, did not have to be registered. It follows that as to such older and better titles the purchaser could claim no protection under the registration laws; his security resting on his duty to explore the lands in person or by agent and ascertain the existence of any adverse possession. But these exceptions do not deprive the purchaser of the protection of the registration (or recording) laws in respect of cases which these laws are broad enough to cover; that is, deeds, and other muniments of title which the law requires to be registered or recorded on the books of the county register of deeds. These laws were dictated by, and give expression to, a great public policy, the policy of making land titles as certain as possible in order that men may repose with a sense of security in the ownership of their landed estates, be they great or small.

The obvious duty, then, of one who purchases directly under a deed containing an exclusion clause is to explore the land for adverse possessions, and to search the public records for prior deeds or other instruments affecting the title. He takes the risk of whatever adequate investigation along these lines of inquiry would disclose. He is conclusively presumed to know whatever in such way could have been discovered. It may be shown against him also that he had actual notice, that is, that some one communicated to him the existence of a prior unregistered deed; but the burden of proving this would rest upon any one asserting the fact. In the absence of such proven actual notice, or notice by the record or registration books, or by actual adverse occupation of the lands, the purchaser, notwithstanding the exclusion clause, has the right in law to rest confidently upon his title.

He is supported, in the first place, by the presumption that the deed in fact conveys all of the land which it describes under its conveying words, notwithstanding an exclusion clause, and by the principle that the burden rests upon any one relying on such exclusion clause to prove that it covers some specific tract or tracts (*Iron and Coal Co.* v. *Schwoon,* infra, 124 Tenn., 209, 135 S. W., 785; *Bowman* v. *Bowman,* infra, 40 Tenn. (3 Head), 48; *Fowler* v. *Nixon,* infra, 54 Tenn. (7 Heisk.), 719; *Bleidorn* v. *Pilot Mt., etc., Co.,* infra, 89 Tenn., 204, 15 S. W., 737; *Wright* v. *Hurst,* 122 Tenn., 656, 127 S. W.,

701); and if in addition to this he make the investi-. gation indicated in the immediately preceding sentences, he may rest in security.

If, despite the failure of the indicated sources of notice to yield any knowledge of the existence of such prior conveyance, there be in fact, lying in the hands of some one somewhere, an unregistered deed, then that deed is, as to him, "inoperative, ineffective, and practically nonexistent." Compare *Campbell* v. *Ice & Coal Co.*, 126 Tenn., 530, 150 S. W., 427.

If this be true as to the immediate purchaser under a deed containing an exclusion clause, it must gather strength as time elapses and subsequent purchasers succeed each other, and must attain an invincible firmness when one purchases after the expiration of fifty years, as in the case of the defendant before us.

If it be true—and for the purposes of this inquiry we have assumed such to be the fact—if it be true that D. F. Wilkins had made the unregistered deed of December 18, 1855, as the agent and attorney in fact of George F. Gerding, or an unregistered deed of similar import bearing as its true date December 18, 1855, which the antedated deed was intended to supply, still the doctrine which we have announced must be held to control as to any purchaser from Wilkin who was not shown to have had actual notice of the existence of such deed. This would present only the ordinary case of one who has purported to convey land by an unregistered deed

to one person, and has subsequently made a conveyance of the same land to another who has first put his deed to record. The latter takes the title; it not being shown that he had actual notice of the prior unregistered deed. A deed unregistered is incomplete in law (though good between the immediate parties), and incapable of conveying the title as against subsequent purchasers not shown to have had actual notice, and also as against creditors of the vendor. The same principle, too, must necessarily control even when the deed formerly unregistered is afterwards registered, if before such belated registration the land has been conveyed by registered deed to one who is a *bona-fide* purchaser in the sense of the statute as already defined, since by such prior registered conveyance the title has passed by contract and by operation of law, and there is nothing at all left in the holder of the unregistered deed; that deed is but a husk, a dry shell. Its subsequent registration counts for naught. Indeed it has been authoritatively held that a *bona-fide* purchaser under a deed may convey to one who had knowledge of a prior equity, and yet such purchaser will obtain a good title, notwithstanding his knowledge. *Perkins v. Hays*, Cooke (3 Tenn.), 163. This conclusion, it is seen, is based on an immutable foundation. But, as a matter of fact, as already stated, the deed of December 18, 1855, was not registered in Morgan county until long after the land in question had been made a part of Cumberland county, and was not

registered in the latter county until many years after the defendant had purchased the land, and indeed, not until after the present litigation had been commenced. It is true that deed was registered in Morgan county (October 9, 1856), before defendant purchased the land (November 18, 1909), and even before W. A. Henderson (year 1891, deed recorded February 3, 1892), the immediate vendee of Wilkin, purchased the land; but that is an immaterial circumstance, since an intending purchaser would not be bound to search the records of Morgan county after the first Monday in April, 1856, when the register's office in Cumberland county was opened, into which latter county, as we have before stated, the land had been transferred by the legislature of the State.

We are referred to *Land Co.* v. *Hilton,* 121 Tenn., 308, 120 S. W., 162, as inconsistent with the principle we have announced that a purchaser is not bound to make inquiry for unregistered deeds. That case does not apply. The points in judgment were different. It is true that it was apparently, on first blush, held in that case. that an unrecorded deed may be validly referred to in a subsequent deed for purposes of description, but as a matter of fact the deed referred to was, as the opinion shows, a regularly registered deed. So the point in judgment was not as broad as the one just stated. The real point adjudged was that where the former deed is in fact a registered one, it need not be referred to as such, but a general reference by name of parties and date

will be sufficient. To hold broadly that a reference to an unregistered paper for description would be sufficient under our registration laws would, in large measure, nullify those laws in respect of the vital function which they were devised for; that is, notice to subsequent intending purchasers and to creditors. The description of the land conveyed is a vital part of the deed. To say that a deed is duly registered when one of its vital parts is blank is manifestly incorrect. The question is not the same as the one which arises when the description is "the tract of land on which I now live," the "tract known as Rose Hill farm," and the like. It is true these are references to matter *in pais* which must be ascertained by inquiry and investigation, just as metes and bounds must be; and they will yield true results to inquiry; they cannot be fabricated as unregistered deeds may be. Moreover, the registration laws are not so drawn as to require the recording of matters identifying description by such local referense, while they are drawn for the purpose of perpetuating written evidences. We do not doubt that a reference to an unregistered paper for description of the land conveyed may be good between the parties, but we are unable to see how such a description can be held good as against subsequent purchasers without actual notice, or as to creditors. Where will they go to seek the unregistered paper? How will they know it is genuine when a paper purporting to be applicable is found? The difficulties suggested by these ques-

tions furnish an ample answer to the contention that such a reference is good against subsequent innocent purchasers or attaching or levying creditors.

We repeat: An exclusion clause in a deed can be made effectual as to a subsequent innocent or *bona-fide* purchaser under the deed containing such exclusion clause only, aside from adverse possession, by showing a prior registered deed or other valid instrument purporting to dispose of the land or adverse possession. Differently stated, the exclusion clause is as to such *bona-fide* purchaser, or creditor, wholly inoperative unless satisfied in the manner just stated. A contrary holding or doctrine would be disastrous. Consider: One desiring to purchase land has an abstract made. This abstract shows that one of the deeds, in the chain of title, conveying a larger tract of which the subject of the proposed purchase is a part, contains an exclusion clause. The abstractor reports that an exhaustive search of the registration books shows no prior conveyance. Can the intending purchaser, after being satisfied there is no adverse possession, rest on this report and buy the land? If he be told that he cannot, but must institute an oral inquiry for some unrecorded paper, possibly made many years before, possibly still in existence, possibly lost, will he not be justified in giving up his enterprise? Will not the registration laws in such a case have failed to serve their purpose? Will not the policy of the State be to this extent set at naught? The rule is, as already stated, that not-

withstanding an exclusion clause, the deed *prima facie* in the absence of a description of the excluded land in the deed itself, conveys all that it describes. But any óne who seeks to appropriate the benefit of the exclusion clause may, indeed must, if he would obtain the benefit, assume the burden of proving that it applies to some particular tract or parcel of land. The question then arises, By what principles shall he be guided in making this proof? Shall he be confined to recorded papers, or shall he be permitted to explore the world for an unrecorded instrument, lodged in some unknown crevice, hidden in some obscure corner, or forming part of the debris in some old loft, or garret, or waste heap of forgotten papers? There being, as stated, no published decision in our State on the point, the problem must be solved by a consideration of the general consequences that would attend the one or the other solution; and these may be stated and contrasted in a single sentence. If the proof can be made by such random search, all chains of land title in which appear deeds containing exclusion clauses are rendered uncertain and hence the titles unmarketable, and the registration laws are to that that extent set at naught. If the other theory be the true one, such titles are marketable, and the registration laws efficiently perform the functions they were designed to perform.

What we have herein held upon the subject of the exclusion clauses in deeds is not in conflict with any of the cases cited in complainant's brief (viz., *Bowman* v.

*Bowman,* 40 Tenn. [3 Head], 48; *Fowler* v. *Nixon,* 54 Tenn. [7 Heisk.], 719; *Bleidorn* v. *Pilot Mountain, etc., Co.* 89 Tenn., 204, 212, 213, 15 S. W., 737; *Iron & Coal Co.* v. *Schwoon,* v. 124 Tenn., 209, 135 S. W., 785; *East Tenn. Coal Co.* v. *Taylor,* 131 Tenn., 11, 16, 17, 173 S. W., 433; *Brier Hill Colliers Co.* v. *Gernt,* 131 Tenn., 542, 546, 175 S. W., 560) as in conflict with our present holding. The effect of the registration laws was not considered in any of them. In the case of *Iron & Coal Co.* v. *Schwoon,* the prior conveyances covered by the exclusion clause were simply mentioned (pages 210, 199, 200), and it was not stated whether they had been registered. However, one of the muniments referred to, the Thompson grant, was manifestly a recorded paper, as are all grants of the State. The same observation is true of *Bleidorn* v. *Pilot Mt., etc., Co.* In the case of *Brier Hill Collieries Co.* v. *Gernt,* it appears that the deed covering the excluded land was a prior registered conveyance. The case of *Northcut* v. *Church,* 135 Tenn., 541, 188 S. W., 220, cited on complainant's brief, has no bearing, being on a different question.

It is insisted by complainant that the decree, above referred to as part of his chain of title, purporting to vest the title to the land in Sarah Lord Kobbe, duly registered in Cumberland county July 3, 1873, was notice to defendant and its predecessors in title subsequent to D. F. Wilkin. Concede this, yet such notice was ineffective because that decree could only pass such title to Sarah Lord Kobbe as was possess-

ed by William A. Kobbe, the defendant to that pro-
ceeding, in which proceeding the land was attached
and sold as the property of the said William A. Kobbe.
His title rested on a deed which was made to him by
Gerding on October 8, 1866, which was never register-
ed in Cumberland county. That deed was, of course, in-
ferior to the prior deed to D. F. Wilkin made and
registered in Morgan county while the land was a
part of that country, on which defendant's title rests,
in one of its lines.

But it is further insisted by complainant that his
rights are superior because the decree referred to
purported to transfer to William A. Kobbe the title
of George F. Gerding. To this contention, however,
there are two answers, each conclusive. The first
is that that part of the decree was *coram non judice*
and merely void. The land was attached, at the suit
of Gerding, as the property of William A. Kobbe,
supposed to have been acquired under the deed of
October 8, 1866, made to him by Gerding, and so offered
for sale and sold. There was no pleading that
could justify a decree purporting to transfer any title
of Gerding; that was not involved further than the
fact that he had made the deed to William A. Kobbe.
*Randolph* v. *Merchants' National Bank,* 9 Lea (77
Tenn.) 69; *Isham* v. *Sienknecht* (Tenn. Ch. App.), 59
S. W., 779; *Reynolds* v. *Stockton,* 140 U. S., 254, 266,
11 Sup. Ct., 773, 35 L. Ed., 464; 1 Black on Judgments,
section 242. The decree and deed under it can convey
only the land which was by the decree directed to

be sold, 24 Cyc., 61, and authorities cited. But it is said this court, in the unreported case of *William Otto and others* v. *R. B. Cassell, Trustee, and others,* and *William Otto and others* v. *C. A. Quinn and others,* decided in 1913, without any written opinion, affirmed the decree of the chancellor, in which he held that the title passed "from the Gerdings" to Sarah Lord Kobbe, under the cross-bills in the Anderson county case above referred to, and that this should be followed under the rule *stare decisis.* It is not insisted that the particular tract, entry 1980, was involved in the Otto Case, or that there is here any question of *res adjudicata;* simply the rule *stare decisis,* as stated. It is unnecessary to consider what else was in that case, but that special ruling was evidently erroneous as shown by the reasons already stated. The rule *stare decisis* cannot be permitted to control, compelling the application of an unreported decision under such circumstances. When there has been a published opinion long relied on, and on faith of which important rights have been presumably based, that decision will be adhered to, even though erroneously decided at the time. The principles governing the subject are stated in *Wilkins* v. *Railroad,* 110 Tenn., 442, 455-461, 75 S. W., 1026.

The second answer above referred to is that Gerding had no title, having previously conveyed it to D. F. Wilkin by deed duly registered.

It is insisted by the complainant that the defendant is estopped to rely on the D. F. Wilkin title by the following facts:

D. F. Wilkin conveyed to W. A. Henderson in the year 1891, by deed recorded in Cumberland county on February 3, 1892. On September 8, 1899, an original bill was filed in the chancery court of Cumberland county in which Harriman' Land Company was complainant, and the Union Land, Coal & Coke Company, and W. A. Henderson and others were defendants, which involved the title to the land in controversy here, and other tracts. An amended and supplemental bill was filed in that cause April 2, 1901. The fifteenth tract described in that bill covered the larger portion of the land in controversy in the present case. In that bill it was alleged that Daniel F. Wilkin never claimed any title to that land for himself, but that he was a trustee for George F. Gerding; that Daniel F. Wilkin had by direction of Gerding executed a deed to Samuel E. Roberts for this land in the year 1856, and that this deed was lost without ever having been recorded. At the August term, 1902, of the Cumberland county chancery court W. A. Henderson was, by order of the court, transferred to the complainant's side of the record, on application of the complainants in that cause. It does not appear that he consented to this transfer, or the contrary. But on July 28, 1902, before this change from the defendant to the complainant side of the record was made, the parties to the cause made a settlement of the matters in controversy between them, at least as to entry No. 1980, which embraces the land in controversy in the case now before us. In effectuating this settlement they made an ex-

change of deeds, by which Harriman Land Company conveyed entry No. 1980 to W. A. Henderson. The Harriman Land Company had been claiming entry No. 1980 by virtue of the deed, before referred to herein, made by George F. Gerding to Samuel E. Roberts June 12, 1856, and recorded in the register's office of Cumberland county August 12, 1873. By the deed made to W. A. Henderson by Harriman Land Company, the two conflicting titles, the Wilkin and the Roberts title, were brought together on July 28, 1902, and lodged in W. A. Henderson. Thus claiming to own both titles, W. A. Henderson conveyed the land to G. A. Schlicher by deed dated April 22, 1905, and recorded in the register's office of Cumberland county on July 13, 1906. Schlicher conveyed to John A. Shillito by deed dated July 9, 1906, and recorded on July 14, 1906. The title then runs through different deeds from John A. Shillito down to the defendant Cumberland Lumber Company, the last deed in defendant's chain being dated November 18, 1909, and registered April 1, 1910.

No reason appears why, after entry No. 1980 had been taken out of the case by the compromise deeds above referred to, in July, 1902, the Harriman Land Company should subsequently, in August of the same year, file its amended and supplemental bill making the charges with respect to the Wilkin deed which we have recited, and on which the complainants in the present bill rely for estoppel; and, particularly, no reason appears why W. A. Henderson should have

permitted his name—if he did permit it—to be trans-
ferred to the complainant's side of the record of that
case, and thus cast a cloud on the title he had de-
rived from Wilkin. We can only surmise that as the
Wilkin deed (Gerding to. Wilkin, February, 1856)
conveyed many other tracts, the allegations referred
to were made by the Harriman Land Company with
a view to recovering one or more of such other
tracts. But at all events, no estoppel was thereby
created in favor of the present complainant. Neither
he nor any of his predecessors in the title were con-
nected with that litigation, nor is it shown that they
did any thing, or abstained from doing anything, by
reason of these allegations, or that, prior to the present
litigation, they ever knew that such allegations had
been made. As to complainant it is a matter purely
*res inter alios acta.* So there is lacking the requisite
mutuality as a basis for estoppel. *Tate* v. *Tate,* 126
Tenn., 169, 214, 148 S. W., 1042; *Ross* v. *Cobb,* 9 Yerg.
(17 Tenn.), 469. Even W. A. Henderson himself
would not be estopped if he were defendant in the pres-
ent case instead of the Cumberland Lumber Company,
for the reasons already stated, and for the want of
privity between him and the present complainant
in respect of the Harriman Land Company litigation.
At most the allegation could be used against him as
evidence of an admission; but he would not debarred
from showing he was mistaken, or from showing, as
was done in the present case by the testimony of Mr.
Wilkin, that these allegations were not true. *Singleton*

v. *Ake*, 3 Humph. (22 Tenn.), 626; 16 Cyc., 685; Bigelow on Estoppel, sections 56-66, note 79. For a stronger reason the defendant lumber company, although it claims through Henderson as one of its predecessors in title, would not be estopped. To hold that the defendant would be estopped, even though Henderson were himself estopped by such matter, the court would have to approve, and rely upon, the manifestly unsound proposition that estoppels arising out of pleadings in cases lying outside of the chain of title would run with the title and be binding on all purchasers subsequently claiming through the person supposed to be estopped by the pleading. Such a rule would introduce unending confusion into real estate titles, and render their satisfactory investigation impossible. All the records of all the courts of the county embracing the land would have to be searched, and every pleading read in every case in which the person in question had been made a party. And even this would not suffice, since the records of the federal court having local jurisdiction would have to be explored for a possible pleading that would yield forth evidence of an estoppel.

The same reasons apply with even greater force against the contention that because W. A. Henderson was the attorney of Gerding in the Anderson county case (if he was in fact such attorney), he must have had knowledge of the unregistered deed made by Gerding to William A. Kobbe in October, 1866. This would not prevent him from lawfully acquiring

the title of D. F. Wilkin under his prior registered deed; and, even if Henderson's knowledge of the unregistered deed of October, 1866, just referred to, was otherwise important, it would not be in the way of defendant's lawfully acquiring the title which Henderson obtained from D. F. Wilkin; and this is true whether defendant had knowledge of the unregistered deed of 1866 or not.

We have thus examined all of the complainant's contentions against the Wilkin title, and have found that none of them can be sustained, and therefore that defendant's claim under that chain is superior to complainant's chain under William A. Kobbe. The same conclusion must also be reached in respect of the Samuel E. Roberts chain under which also the defendant claims. This is apparent from what we have incidentally said in respect of this chain while considering the Wilkin chain and the William A. Kobbe chain. That is to say: We have already pointed out that, although the registration of the decree in the Anderson county case was had in Cumberland county prior to the registration of the deed made by George F. Gerding to Roberts, yet the deed on which the Anderson county decree was based, that is, the deed from George F. Gerding to William A. Kobbe, was never registered in Cumberland county at all, and, further, that the attempt in that decree to divest a supposed title out of George F. Gerding and vest it in Sarah Lord Kobbe was futile, and wholly without legal significance, and that the Roberts

title was owned by the defendant lumber company, the two sources of title, the Wilkin title and the Roberts title having coalesced in W. A. Henderson, and having been thence passed on through various succeeding purchasers down to the defendant lumber company. Moreover, it is even true that the same reasons which sustain the conclusion as to the superiorty of the Roberts title sustain the superiority of the Slausson title, as outstanding and superior to that claimed by complainant under the William A. Kobbe deed and the proceedings based on it in the Anderson chancery court; the Slausson deed having, though late, been registered in Cumberland county, and the William A. Kobbe deed never registered there; and the attempt to transfer a supposed title from Gerding to William A. Kobbe by the decree of confirmation in the said Anderson county case having been wholly abortive for reasons already stated. So it is apparent that the complainant has no sort of legal claim to the land sued for.

It is unnecessary to consider the defense of adverse possession put forward by the defendant, the other grounds, really either of them, being sufficient to defeat the bill. Indeed we might have contented ourselves with a discussion of the Wilkin title, but the Roberts title and the Slausson title were so intermingled with it that the discussion of the one practically, though not necessarily involved a consideration of the other two.

It results that the decree of the chancellor dismissing the bill must be affirmed, with costs.