# THE STATE v. MYERS.

## (*Knoxville.* October 25th, 1886.)

1. INDICTMENT. *Description of stolen animal. Misspelling.*

   An indictment for horse-stealing, which describes the animal stolen by the misspelled word "mair," is good.

2. SAME. *Signed by "District Attorney."*

   An indictment signed by the proper officer, styling himself "District Attorney," is good.

   Case cited and criticized: Teas v. The State, 7 Hum., 174.

3 SAME. *Judicial notice of official character.*

   The Courts take judicial notice of the proper officer to prefer idictments; and when it appears he intended to sign officially, will disregard the omission of any, or the adding of an improper, official designation.

   Cases cited and approved: Greenfield v. The State, 7 Bax., 18; Donohoo's Lessee v. Brannan, 1 Tenn., 328; Bennett v. The State, Mart. & Yerg., 133; Major v. The State, 2 Sneed, 11; State v. Evans, 8 Hum., 110; State v. Cole, 9 Hum., 626; Fancher v. DeMontegre, 1 Head, 40.

---

### FROM MARION.

---

Appeal in error from the Circuit Court of Marion County. D. C. TREWHITT, J.

Attorney-General PICKLE for the State.

W. A. DONALDSON for Myers.

FOLKES, J.   This indictment for horse-stealing
was quashed on motion of defendant in error, and
the case is brought here by the State to reverse
the action of the Circuit Court of Marion County.

There were two grounds assigned in support of
the motion:

*First*—That the indictment does not state the
property stolen.

This was properly overruled, as it was based
alone on the misspelling of the word mare, the
Court holding that a mare was none the less a
horse, because spelled "mair."

*Second*—The second ground was that the in-
dictment is signed A. A. Hyde, "District Attor-
ney," instead of "Attorney-General," it being
claimed that there is no such officer as District
Attorney recognized by law in this State.

The contention of counsel for defendant is placed
mainly upon the cases of *Teas.* v. *The State*, 7
Hum., 174, where it was held that an indictment
signed by the prosecuting officer, styling himself
"Solicitor-General," was void, because there was
no such officer known to the law; and *Greenfield*
v. *The State*, 7 Bax., 18, where the indictment
was signed "A. J. Caldwell, Attorney-General,"
which was claimed as error, it being insisted that
the proper style of this officer, after the Consti-
tution of 1870, was "Attorney for the State."

In this case, combating the idea that an indict-
ment was void because the officer had not styled
himself "Attorney for the State," Judge McFar-

The State *v.* Myers.

land rendering the opinion, in reviewing the legislation on the subject, says: ·

"Previous to the Constitution of 1834, by the Acts of 1819, Ch. 52, Sec. 1; 1825, Ch. 272, Sec. 2; 1833, Ch. 43, Sec. 1, this officer is styled 'an Attorney-General.' In the Act of 1827, Ch. 49, Sec. 12, he is styled as a 'Solicitor.'

"The Constitution of 1834 enacted that the Legislature shall elect 'Attorneys for the State.'

"The Act of 1835 provided that each Judicial Circuit should constitute a solicitorial district, for which there should be elected by the General Assembly one 'Attorney-General.'"

The Constitution of 1870, Art. VI., Sec. 5, enacts that "An Attorney for the State, or any Circuit, or District, for which a Judge having criminal jurisdiction, shall be provided by law, shall be elected by the qualified voters of such Circuit or District," and that "in all cases where the *Attorney* for any *District* fails or refuses to attend and prosecute according to law, the Court shall have power to appoint an Attorney *pro tempore.*

The indictment in the case at bar, having been found in 1866, the Constitution of 1870 is only quoted to more fully illustrate the decision in the 7th Baxter case.

The language of the Constitution of 1834 is substantially the same as that of 1870.

We find, then, that in the case of *Greenfield* v. *The State*, the Court held that, notwithstanding the fact this officer is styled in the Constitution, and

in some of the Acts of the Legislature, as the "Attorney for the State," he was also long known and styled as "Attorney - General," and that the latter title was *a proper one* to be affixed to his official signature on an indictment.

But this case does not decide that "Attorney-General" is the *only* proper title for this officer, nor does it decide that any title is essential. In the conclusion of the opinion the learned Judge uses the following language:

"Besides, *the Court takes judicial knowledge that A. J. Caldwell was the proper officer to prefer this indictment,* and his having designated himself by the title which has been used for more than fifty years does not throw doubt upon the question."

Now, we have already seen that this officer is referred to in the Constitutions of 1834 and of 1870 as "Attorney for the State," while a reference to our statutes shows that he is called indifferently "Attorney-General" and "District Attorney." He is called "District Attorney" in the Code at Sections 5090a, 900, 3952a, 2310, 669, 3961, 5596, 5598, 5599, 5568, 1557, and many others, while in Sections 317, 879, 885, 5426, 3962, 3963, 4964, 5600, and numerous others, he is called "Attorney-General." That the terms are used as convertible does not seem to admit of doubt. ·If there be any difference in the frequency of the use of one over the other it appears to be in favor of the "District Attorney."

Not only have our statutes used the titles interchangeably, but our Judges have also so used them. Thus, in *The State* v. *Lockett*, 3 Heis., 274, it is said the statute requires that upon every indictment the "Attorney-General" shall indorse the names of the witnesses, etc., citing § 5596, and when we turn to this section we find that "Attorney-General" does not appear in it at all, but only the title "District Attorney." It is a little curious to note that in the article of the Code just referred to there are eight sections referring to this officer, in four of which he is called District Attorney, and in four he is designated "Attorney-General."

Were it not for the case of *Teas* v. *The State*, 7 Hum., invoked by the counsel for the defendant, we might well let this opinion stop here; but the earnestness with which this case is pressed as an authority justifies us in adding that even if "District Attorney" were a title unknown to the law it would not, in our opinion, vitiate the indictment, for the reason that this Court will take judicial notice of who was the proper officer to prefer this indictment; and he need not add his official designation if it sufficiently appear that he intended his signature to be official, and this may appear from the context. Thus, in *Donohoo's Lessee* v. *Brannan et al.*, 1 Tenn., 328, this Court has said:

"In this case it is not stated that the acknowledgment of the deed was received as judge; but

as the Act would be void if done as an individual, the law will presume the acknowledgment to have been taken in pursuance of the authority with which John McNairy was clothed at the time the act was done."

Again, in *Bennett* v. *The State*, Mart. & Yer., 133, this language occurs:

"The second objection is that the Solicitor did not sufficiently sign the indictment. It is signed, 'Thos. B. Craighead, Attorney-General for the Ninth Solicitorial, in the State of Tennessee.' The Court are bound to know the officers of the government who are appointed by the Legislature, and therefore think the signing good. The Solicitor should indorse his name upon some part of the indictment to show it preferred by the authority of the government; that he is the proper attorney the Court will know."

To the same effect as to the judicial notice that will be taken of the officer is *Major* v. *The State*, 2 Sneed, 11, a case where the certificate of the Clerk failed to show a seal; and in enumerating the officers of which the Court will take judicial knowledge we find Chief Executive, heads of departments, judges of the courts of general jurisdiction, attorneys for the State, sheriffs, etc. So in *State* v. *Evans*, 8 Hum., 110, where the Attorney-General failed to add to his signature to an indictment the judicial circuit for which he was such Attorney-General—there judicial notice was taken not only of the circuit for which he acted

but of his appointment by the Governor as Attorney-General *pro tempore*.

In *State* v. *Cole*, 9 Hum., 626, the *venire* was signed by the Clerk without designating himself as Clerk. The Court say:

"We do not think the judgment in this case ought to have been arrested upon the supposed defects of this writ of *venire facias*. The signature of the Clerk as made by him is good. It has always been held that, as a matter of necessity, the courts will judicially know the public officers of the State and county. In this case, in the absence of proof to the contrary, we must recognize B. H. Graves as the Clerk of the County Court of Decatur, he being the only legally authorized person to issue the writ for the Circuit Court of that county. We do not see how additional verity of this fact could be given by the appendage to his name of the letters 'C. C. D. C.,' or, at length, 'Clerk of County Court of Decatur County.' This would not make him Clerk if he were not. We know he is Clerk, and therefore give verity to his acts evidenced by his signature when they are official in character."

See also *Fancher* v. *DeMontegre*, 1 Head, 40.

Applying the reasoning so cogently put by Judge Turley in Cole's case, we do not see how we can well fail to take judicial notice that A. A. Hyde was in 1866 Attorney-General of the judicial district in which Marion County is situated, and his signature being so attached to the indictment as

The State *v.* Myers.

to leave no possible doubt that he intended it as an official authority from the State for the preferment of the indictment, even if there could be a question as to his proper official designation.

It is true that this does not harmonize altogether with *Teas* v. *The State*, 7 Hum., 174, but we need only say of this case what Judge Cooper, in the appendix to his edition of Cooke's Reports, has said: that it is a decision which it is difficult to reconcile with those mentioned above; for if the Court can take judicial knowledge of the incumbent the misdescription is mere surplusage. The judicial knowledge of the Court ought, it would seem, to cure formal defects and omissions, otherwise it is knowledge to little purpose.

The judgment will be reversed and cause remanded.