VIRGINIA C. DUNLAP *et al v.* S. M. SAWVEL *et al.*

(*Knoxville.*   September Term, 1919.)

1. PUBLIC LANDS. Where complainants derive title from grant, bur-
den is on defendants to show exclusions from grant.

Where complainants show a perfect chain of title through their
ancestors from the state under a grant which excludes prior legal
claims, the burden of proof to show these prior legal claims is on
defendants, who must show that these exclusions cover certain
specific tracts. (*Post, pp.* 700-702.)

Cases cited and approved: Kobbe v. Land Co., 139 Tenn., 266; Iron
& Coal Co. v. Schwoon, 124 Tenn., 209; Bowman v. Bowman, 40
Tenn., 48; Fowler v. Nixon, 54 Tenn., 719; Bleidorn v. Pilot
Mountain, etc., 89 Tenn., 166; Wright v. Hearst, 122 Tenn., 656.

2. ESTOPPEL. Must be pleaded.

Estoppel, as estoppel to claim land because of prior conveyance
thereof, to be available must be especially pleaded. (*Post, pp.*
702-704.)

Cases cited and approved: Turley v. Turley, 85 Tenn., 261; Jourol-
mon v. Massengill, 86 Tenn., 81;

3. EVIDENCE. Proof of loss of entry taker's books may be made by
last custodian thereof.

To render admissible other evidence of entries and grants of public
lands, it was competent to prove by the last custodian of the rec-
ords of the entry taker's books that said books were lost or de-
stroyed. (*Post, pp.* 704-707.)

Case cited and distinguished: Duncan & Mills v. Blair, 2 Overton,
213.

4. EVIDENCE. County surveyors presumed to do their duty; copies
of surveys admissible as evidence of entries of public lands where
records are lost.

Where neither original entries of public lands nor duly certified
copies thereof could be found because of the loss during the Civil

Dunlap v. Sawvel.

War of the entry taker's books, copies of surveys by county surveyor of the entries was the next best evidence of the fact that the entries were made and of their contents, since surveyors, in making a survey, act independent of the claimants of the land, and are legally presumed to do their duty. (*Post, pp.* 707-709.)

Cases cited and approved: Rogers v. Jennings, 11 Tenn., 308. Loyd v. Anglin, 15 Tenn., 428; Mitchell v. Lipe, 16 Tenn., 179; Frierson v. Galbraith, 80 Tenn., 129; State v. Myers, 85 Tenn., 203.

Case cited and distinguished: Blount v. Ramsey, 3 Tenn., 498.

5. **PUBLIC LANDS.** Where initial entry is special, all other entries in "checkerboard system" are special.

Where an initial entry is a special entry, all the other entries in a "checkerboard system," dependent thereon, are thereby made special entries, and entries based on the "checkerboard system" are valid. (*Post, p.* 709.)

Cases cited and approved: Iron Co. v. Railroad, 131 Tenn., 221; Coal Co. v. Scott, 121 Tenn., 88; Harriman Land Co. v. Quinn, — Tenn. —.

6. **PUBLIC LANDS.** Where entries are special, grant relate back to time of entry.

Where the entries on which grants are based are special, the grants relate back to the date of entry, and therefore are the better title to the lands, as against a grant excluding prior legal claims. (*Post, pp.* 709, 710.)

Case cited and approved: Wright v. Hurst, 122 Tenn., 669.

---

FROM BLEDSOE.

---

Appeal from the Chancery Court of Bledsoe County. —Hon. Foss H. Mercer, Chancellor.

Solon L. Robinson and R. E. Robinson, for plaintiffs. J. B. Swafford, for defendants.

Mr. Special Justice Cassel delivered the opinion of the · Court.

This is an action of ejectment, brought by Virginia C. Dunlap, P. H. Schoolfield, Jr., James C. Schoolfield, John T. Billingsley and wife, Mrs. John T. Billingsley, Mrs. Versha Norwood, Unice Schoolfield, John L. Schoolfield, Mrs. Hortense Legate, Mrs. Sue Bozarth, next friend to and on behalf of Katie Schoolfield and Mary Schoolfield R. E. Schoolfield, S. B. Schoolfield, J. L. Schoolfield, Jr., H. M. Schoolfield, A. B. Schoolfield, Nina Hopson, Bertie Cannon, Angie Hopson, William Hopson, Mrs. Eddie Harrison, Stewart Hopson, in his own right and as next friend to and on behalf of Nettie Fay Pennington, Pattie H. Hankins, C. C. Schoolfield, Robert Schoolfield, John A. Schoolfield, H. M. Schoolfield, J. L. Schoolfield, John V. Spring, Fannie Page Haynes, next friend to and on behalf of Jesse Haynes and William Spring Haynes, Mrs. Clara Boring Ball, John R. Boring, in his own right and next friend to and on behalf of Edward Earl Reeves, John Peter Reeves, Fred Reeves, and Addie Elizabeth Reeves, H. B. Stephens and wife, Clara Stephens, Aaron T. Schoolfield, J. R. Schoolfield, A. H. Nail and wife, E. M. Nail, S. H. Cowan and wife, Anna Cowan, R. W. Walker and wife, Minnie Walker, Dave Schoolfield, Curry Schoolfield, Burt Humble and wife, Ethel Humble, Henry Turner and wife, Nancy Turner, J. L. Schoolfield, Mary Schoolfield, and Robert B. Schoolfield, executor of the estate of W. A. Schoolfield, deceased, to recover 5,000 acres of land under grant 4764 on entry 1226, State

of Tennessee, to James I. Riddle, excluding 2,500 to 3,000 acres of prior claims (some thirty-three small tracts owned by actual settlers), and to recover damages for timber alleged to have been cut on the land by the defendants since the year 1912.

Defendants say complainants may be entitled to forty acres in the northeast corner of said grant and to four or five acres in a narrow strip, partly triangular in shape, east and north of Mrs. J. E. McDaniel's seventy-five acres, described in Exhibit A to the bill, and also defendants disclaim from 5 to 10 acres adjoining what is known as the Thomas Knight claim near the top of the mountain at Lowes' Gap, being two small triangular-shaped pieces just south and north of the east corner of the Knight land. As to the remainder of the land sued for, defendants plead the statute of limitations of seven years by their predecessors in title and themselves, plead outstanding title, and plead equitable estoppel.

The chancellor dismissed complainants' bill and the case is now before this court by appeal of complainants, although both parties assigned errors.

Complainants have deraigned title from the State of Tennesse through their ancestors and seem to show a perfect chain of title. In fact, this is admitted by the defendants in their proof. We will now dispose of the defense set up by respondents in order to arrive at a conclusion in the case.

At the outset, we may set it down as a sound proposition of law that, in absence of a superior title being in the defendants or outstanding or shown, complain-

ants must recover the land sued for, and in order to eliminate some questions of law, which counsel seem to disagree on, we will mention these at the beginning.

First, the grant sued on excludes prior legal claims, and we hold it to be the law that the burden of proof, to show these prior legal claims is on the defendants, and not only is this true, but defendants must show that these exclusions cover certain specific tracts. In the absence of such a showing everything else out of the way, complainants will recover the land embraced within the calls of their grant. *Kobbe* v. *Land Co.,* 139 Tenn., 266, 201 S. W., 762; *Iron & Coal Co.* v. *Schwoon,* 124 Tenn., 209, 135 S. W., 785; *Bowman* v. *Bowman,* 40 Tenn. (3 Head), 48; *Fowler* v. *Nixon,* 54 Tenn. (7 Heisk.), 719; *Bleidorn* v. *Pilot Mountain, etc.,* 89 Tenn., 166, 204, 15 S. W., 737; *Wright* v. *Hearst,* 122 Tenn., 656, 127 S. W., 701.

The defendants attempt to show in the record that complainants' ancestor, Charles Schoolfield, deeded away several tracts of land within the calls of grant 4764, and there is some proof tending to show that Charles Schoolfield did as a matter of fact attempt to convey three tracts of land, of five hundred acres each, with the calls of the grant, but from the description in the deeds filed in the record and from the other proof in the record we are unable to locate these tracts of land. It is contended on the part of the defendants that Charles Schoolfield platted this land into ten small tracts, and deeds are put into record for what is known as tracts 7, 8, 9, but the description of these tracts are insufficient, for by them the land cannot be located, and

·we believe that. the preponderance of the proof as found in this record is against any accurate location of this land being shown. For instances, tract known as lot No. 6, found in the record at transcript, page 192, calls to begin on lot No. 7, deed being dated the 15th of August, 1837; tract No. 2, purporting to convey five hundred acres, number of lot not given, calls to begin on lot No. 9, deed dated 15th of August, 1837 (transcript, page 196); tract No. 3, designated as lot No. 7 and purporting to convey five hundred acres, calls to begin on lot No. 8 deed dated 25th of May, 1837 (transcript, 204); tract No. 4, from David Schoolfield to Charles V. Caper (transcript, page 208), purporting to convey five hundred acres and designated as lot No. 9, calls to begin on lot No. 8. These are the only deeds filed by defendants to show conveyances from Charles Schoolfield, and not one of these deeds fixes a locative corner or known point that can be found. The nearest any witness comes to locating these lots is the testimony of J. L. Daniels, witness for defendants, in which this witness attempts to locate the four lots by assuming that at some time there were other conveyances, made by either Charles or David Schoolfield, and he seems to think that there were originally ten lots numbered from one to ten cnsecutively, and that these ten lots consumed practically all of the five thousand acres. From the evidence of Daniels and Blackburn, the two surveyors in the case, we are of the pinion that these four lots 6, 7, 8, and 9, might be shown to be susceptible of several definite locations. To be exact, these four conveyances have no fixed be-

ginning locations, and we doubt exceedingly if lot No. 9, is inside of the grant at all, even though this lot does not purport to be conveyed by Charles Schoolfield.

We think that, in order to estop the complainants from recovering the land which they are plainly entitled to recover (everything else being out of the way), by having deraigned a perfect title from the State of Tennessee, by mesne conveyances made by their ancestors in interest, these conveyances must be capable of being definitely located and shown on the ground embraced within the grant. We are of the opinion that the preponderance of the evidence in the record is to the effect that these four lots in question cannot be definitely located, and therefore these conveyances do not work an estoppel against the complainants; especially would this be true of the conveyances executed by David Schoolfield. In this connection, however, we will say that there is a conveyance in the record of two hundred acres from Charles Schoolfield to E. L. Barabino in the northwest corner of the tract, which complainants cannot in any view of the case recover as this two hundred acres is definitely located and was deeded away, and is eleminated fro many possible recovery in this case. This two hundred acres is set out in Exhibit 1 to the deposition of J. L. Daniel filed herein (transcript 200), deed dated September 25, 1837.

Defendants seek to show that complainants are estopped on account of these conveyances to establish their title to the land in question, but on examination of the pleadings we do not find that estoppel is pleaded as to these conveyances anywhere in the defendant's

answer, and our courts have uniformly held that estoppel, in order to avail anything, must be especially pleaded, and for this reason we do not consider that, even if the lands described in the deeds could be located, the complainants would be inhibited from recovering their land, in the absence of estoppel being especially pleaded. Daniel's Chancery Practice (5th Ed.), 659-661; *Turley* v. *Turley*, 85 Tenn., 261, 1 S. W., 891; *Jourolman* v. *Massengill*, 86 Tenn., 81, 5 S. W., 719. However this is, we say that, had estoppel been specially pleaded, we think the descriptions so vague and indefinite that it would not have availed defendants anything for reasons above stated.

We next come to the question of superiority of titles as to certain entries and grants, on account of overlapping of grants 4789, 4793, and 4794, entries 1165, and 1158, with grant 4764 (complainants' grant). It is claimed by defendants that these entries and grants, which are shown on Exhibit A to the deposition of M. G. Blackburn, constitute what is known as one of the Eastland and Lane system of entries (checkerboard system), and that these entries depend on each other for location, the initial entry being No. 1140, which is special, and that this system, being special, is a better title than complainants' grant, and that complainants cannot recover for this reason. It appears, however, in the record, that neither the original entries nor the duly certified copies of these entries can be found, and hence a number of them are left out of the record, and complainants claim that, this being true, there is no competent evidence in the record showing the correct location of these entries and grants, and defendants attempt

to put in certified copies of the surveys of these entries, in order to overcome this contention, and they insist that in the absence of the entries themselves (which were destroyed during the Civil War) the surveys are the best evidence of said entries.

This is a question of first impression in Tennessee, and, so far as we have been able to ascertain, no case directly in point has heretofore been decided by our courts.

The county surveyor of Bledsoe county, since an act of 1870 consolidating the office of surveyor and entry taker, has been the proper custodian of the entry taker's books of the said county. There is no proof in the record that the county has elected any county surveyor since the year 1902, when one Blackburn, a witness for the defendants, went out of office as county surveyor; Blackburn having been elected and served his last term as county surveyor from 1898 to 1902. On the trial of the case the defendants read the testimony of Blackburn, former county surveyor, to the effect that he had been county surveyor of Bledsoe county for the years 1890 to 1894 and for the years 1898 to 1902, and it appears to be a fact that while he was county surveyor, under the law, he was the proper and legal custodian of the entry taker's books of Bledsoe county. This man Blackburn testified that these books were not in his office when he was county surveyor, and that it was a general report that the entry taker's books, recording the land transfers of Bledsoe county up to the year 1868, were lost or destroyed during the Civil War. The complainants made the point that this evidence was not competent and the chancellor excluded the evidence,

and the defendants have assigned errors on this point. We believe this evidence to be competent. Blackburn was, so far as the records show, the last custodian of the records of the entry taker's books, and it is competent to prove by him that said books were lost or destroyed. Mr. Jones, in his work on Evidence (2d edition, section 213), uses this language:

But it is not necessary to call the last custodian with whom a document was left, when the office has been searched by another person and the latter is to testify."

Section 214: "It is enough if the evidence is proven to the satisfaction of the court, and loss or destruction may be proven by circumstantial evidence."

We think that the case of *Duncan & Mills* v. *Blair,* 2 Overton, 213, 214, is in point. In this case, which was an effort to prove title to land, one of the parties offered in evidence a copy of the grant from the register's office, a copy of the warrant on which the grant was issued, a copy of the survey, a copy of a book called an abstract of the entries of Carter's office. It was admitted that these entry taker's books were lost or destroyed, but counsel objected to the acceptance of these documents in evidence, and the lower court sustained the exception. This case was reversed by this court and the following language used:

"Again, it has been insisted that the evidence offered was rightfully rejected, because the copy of the location would be better evidence of the entry than the evidence offered:

"This is not our opinion. The location is the written description of the land intended to be entered. It is

142 Tenn.—45.

the party himself who gives this description, furnished the entry taker with it, and from this description the entry is to be made on the record. The party might write this description and no entry be made. But the issuance of the warrant presupposes the entry actually made by the public officer, whose duty it was, when issuing the warrant, to put a copy of the entry in its face. To say the lease of this point, we are of opinion that the evidence offered was of equal dignity with a copy of the location.

"It has been further insisted that no evidence whatever can be received to prove the existence of an entry, but a copy taken from the record itself and certified by the entry taker.

"It is certainly true that, while the record existed, a copy from it would have been requisite; but, when it is either lost or destroyed, we must either admit evidence in its nature inferior to this, or the rights of individuals will be lost.

"The rule of law is that the party shall produce the best evidence in his power.

"When the record is destroyed, a copy from it cannot be produced, unless the party had, previous to its destruction, furnished himself with one, which is very seldom the case. Shall the party then lose his right, on account of an accident which was not occasioned by any act or neglect of his? It is conceived not. He must be allowed to use such evidence as it is in his power to produce; if that evidence satisfies the court and jury of the truth of the fact he wishes to establish, he ought to have his right as much as as if he had made it evident by a copy from the record. A contrary doctrine

would destroy the right of every first enterer, unless he was likewise the first grantee, which is frequently not the case.

"Upon these grounds, it seems to me that the circuit court erred, and that its judgment ought to be reversed."

As stated above, it was impossible, the records being destroyed, for the copy of the entries to be produced, and we think, under the facts of this particular case, that the copies of the surveys are the next best evidence of the fact of the entries having been made and their contents; especially do we think this to be the correct rule and law, since it has been held by this court as follows:

Surveyors in making a survey act independent of the claimants of the land and "the law presumes every officer does his duty." *Blount* v. *Ramsey,* Cooke, 489, 492.

It is a well-established law in Tennessee that every sworn officer does his duty, and in the absence of proof to the contrary this presumption will prevail. *Rogers* v. *Jennings,* 3 Yerg., 308; *Loyd* v. *Anglin,* 7 Yerg., 428, 431; *Mitchell* v. *Lipe,* 8 Yerg., 179, 181, 20 Am. Dec., 116; *Frierson* v. *Galbraith,* 12 Lea, 129; *State* v. *Myers,* 85 Tenn., 203, 207, 5 S. W. 377.

Now it is shown in the record that these grants Nos. 4789, 4793, 4794, based on entries 1165, 1166, 1158 overlap and completely cover the entry and grant sued on in this case which is grant No. 4764, entry No. 1266.

It is further shown in the record that the initial entry No. 1160 was made by Thomas B. Eastland May 2,

1836, which is recorded in the land office of Tennessee and is as follows:

"State of Tennessee, Bledsoe County.

"By virtue of entry No. 1140, bearing date 2d May, 1836, made in the entry taker's office of Bledsoe county, I have surveyed for Thomas Eastland one hundred and ninetyone acres of land situate in Bledsoe county on B. creek and its waters:

"Beginning at a stake standing 10 poles E. of where the line between the counties of White and Bledsoe crosses said creek, and running thence S. 894.4 poles to a stake; thence E. 894 poles to a stake; thence N. 894.4 poles; thence W. 894 poles to the beginning.

"The calls of this survey include 4,809 acres of land previously appropriated, leaving 191 acres of land at the N. W. corner thereof.   Surveyed 16 August, 1836, by

PETER HOODENPYLE,
"Surveyor Bledsoe County."

On this entry grant No. 4783 was issued to Thomas B. Eastland.   The proof in this cause shown that this entry is the initial entry and part of a system of entries on which grants were issued by the State of Tennessee to Thomas B. Eastland and that entries 1158, 1165, and 1166 on which grants 4793, 4789, and 4794 were issued to Thomas B. Eastland, as shown by the witness Blackburn.   This witness further testifies that he has surveyed and located entry 1140, and that old county line between Bledsoe and White counties called for in the entry where it crosses B. creek is well known to surveyors, and he has proven its location as being

correct, and we think entry 1140 is special. We think that, from the proof that he and the witness Daniels, also a surveyor, both agreed, the land covered by these three grants is correctly located.

It is also shown in the evidence that entries 1158, 1165, and 1166 are connected up by a "checkerboard system" with initial entry 1140. We think this initial entry No. 1140 is a special entry, and, this being true, all the other entries in the "checkerboard system," which call for the others, are thereby made special entries. Entries on land based on the "checkerboard system"—that is, one built on another—have been held to be valid by our courts in a number of decisions, and we need only to quote two or three cases, because the doctrine is firmly established in Tennessee. See *Iron Co.* v. *Railroad*, 131 Tenn., 221, 174 S. W., 1122; *Coal Co.* v. *Scott*, 121 Tenn., 88, 114 S. W., 930; *Harriman Land Co.* v. *Quinn*, memorandum opinion of this court, 1920.

It has been further held that, where the entries on which grants are based are special, the grants relate back to the date of entry, and therefore are the better title to the lands in controversy. *Wright* v. *Hurst*, 122 Tenn., 669, 670, 127 S. W., 701.

The three entries last above mentioned therefore become special and the grants based on them relate back to the date of the entries, especially to initial entry 1140, which antedates the date of entry 1226, on which grant 4764 is based, and therefore are better titles than the complainants' grant. This being true, the complainants must fail to recover the land sued for in their bill, except that they should have a decree for the land

embraced in their bill, which is disclaimed by the defendants in their answer (transcript, page 7) to wit: Forty acres in the northeast corner of said grant 4764, forty to fifty acres along the east line of the land described in the bill, being a triangular-shaped tract of land, adjoining and east and north of Mrs. J. E. McDaniel's seventy-five acres, described in Exhibit A to the bill, and also ten acres along the east line of the land described in the bill and known as the Thomas Knight tract, at an near the top of the mountain at Lowes Gap, being two small triangular-shaped pieces just south and north of the east corner of the Knight land. As to these tracts of land, which defendants disclaim, complainants are entitled to a decree. This disposes of the case, except that we may say in passing that we are also of the opinion, on the question of possessions claimed and relied on by the defendants, that said defendants have established their contention on this point, and that records show that such possessions were kept up many years longer than required by the statutes, and were open, notorious, and continuous, and are by this vested in the defendants a good title to the lands sued for.

The decree of the chancellor will be affirmed, except as above indicated, and the costs will be paid by the complainants.