## Lummus Cotton Gin Co. *v.* W. R. Arnold *et al.*[*]

### (*Jackson.* April Term, 1924.)

1. **CORPORATIONS.** Foreign corporation failing to comply with statute cannot maintain action arising out of business in State.

   A foreign corporation which does not file a copy of its charter in office of secretary of state, as required by Acts 1877, chapter 31, and Acts 1891, chapter 122, cannot maintain an action arising out of business transacted within the State. (*Post, pp.* 548, 549.)

   Acts cited and construed: Acts 1891, ch. 122; Acts 1877, ch. 31.

   Cases cited and approved: Amusement Co. v. Albert, 128 Tenn., 419; Cary-Lombard Lbr. Co. v. Thomas, 92 Tenn., 587; Harris v. Water & Light Co., 108 Tenn., 245; Louisville Property Co. v. Nashville, 114 Tenn., 213; Lumber Co. v. Moore, 126 Tenn., 313; Heating & Ventilating Co. v. McKnight & Merz, 140 Tenn., 563.

2. **CORPORATIONS.** Foreign corporation held "doing business" in the State, and not having filed copy of charter not entitled to sue.

   Where a foreign corporation sold a ginning machine to a resident of Tennessee and, as part of consideration, agreed to erect and install such machine, though this could have been done by any mechanic, and further maintained a branch office and a repair shop in Tennessee, *held* that it was "doing business" in the State, and, not having filed copy of charter, as required by Acts 1877, chapter 31, and Acts 1891, chapter 122, it could not maintain an action in Tennessee for the price. (*Post, pp.* 549-556.)

───────────────────────────────────────────

[*]On effect of agreement by foreign corporation to install article within the state to bring it within statute regulating foreign corporations, see notes in 14 L. R. A. (N. S.), 673, L. R. A., 1917C, 1014.

On effect of agreement by foreign corporation to install article within the state to bring transaction within State control, see note in 11 A. L. R., 614.

Lummus Cotton Gin Co. v. Arnold.

Acts cited and construed: Acts 1891, ch. 122; Acts 1877, ch. 31.

Cases cited and approved: Browning v. Waycross, 233 U. S., 16; Palm Vacuum Cleaner Co. v. Bjornstad, 136 Minn., 38; York Mfg. Co. v. Colley, 247 U. S., 21.

Case cited and distinguished: Lloyd Thomas Co. v. Grosvenor, 144 Tenn., 347.

RESPONSE TO COMPLAINANT'S PETITION TO REHEAR.

3. **CORPORATIONS.** That foreign corporation's name not on published list prima-facie evidence that it has not qualified to do business.

In view of Pub. Acts 1919, chapter 184, requiring secretary of State to publish a certified list of foreign corporations, which have filed copies of their charters as required by law, and making such list prima-facie evidence that corporations named thereon have filed copies of their charters, failure of name of corporation to appear in such list is prima-facie evidence that it has not filed its charter. (*Post, pp.* 556-558.)

Acts cited and construed: Acts 1919, ch. 184.

Cases cited and approved: Rogers v. Jennings, 11 Tenn., 308; Loyd v. Anglin, 15 Tenn., 428, 431; Mitchell v. Lipe, 16 Tenn., 179; Frierson v. Galbraith, 80 Tenn., 129; State v. Myers, 85 Tenn., 203; Beasley v. Smith, 22 Tenn., 406; Gibson v. Martin, 26 Tenn., 127; Caruthers v. Harbert, 45 Tenn., 362; Maxwell v. Jonesboro Corp., 58 Tenn., 257.

Case cited and distinguished: Dunlap v. Sawvel, 142 Tenn., 707.

4. **EVIDENCE.** Presumed that every sworn officer does his duty.

It is presumed that every sworn officer does his duty. (*Post, pp.* 558, 559.)

5. **EVIDENCE.** Presumed that official acts of officer in another State performed as required by law of that State.

In absence of proof to the contrary, it is presumed that official act of officer in another State has been performed as required by law of that State. (*Post, p.* 559.)

6. EVIDENCE. Presumed that notary public, certifying he had done a public act, has done it correctly, until contrary appears, and burden on one denying its correctness.

A notary public is a public officer, and, when he certifies that he had done a public act, it must be presumed that he has done it correctly, unless some statute or rule requires a particular mode, until the contrary appears, and burden of proof is on one denying its correctness. (*Post*, pp. 559-561.)

Case cited and distinguished: Chesapeake & Delaware Canal Co. v. United States, 153 C. C. A., 593.

*Headnotes 1. Corporations, 14a C. J., Section 4005; 2. Corporations, 14a C. J., Sections 3978, 3993; 3. Corporations, 14a C. J., Section 4072 (1926 Anno); 4. Evidence, 22 C. J., Section 69; 5. Evidence, 22 C. J., Section 69; 6. Evidence, 22 C. J., Section 70.

## FROM MADISON.

Appeal from the Chancery Court of Madison County. —Hon. T. C. Rye, Chancellor.

C. W. Hewgley, for plaintiff.

J. I. Galbraith and Anderson, Rothrock & Carroll, for defendants.

Mr. Justice Hall delivered the opinion of the Court.

The bill in this cause was filed by complainant, Lummus Cotton Gin Company (a foreign corporation), with its principal office and place of business located in the city of Columbus, State of Georgia, against the defendants W. R. Arnold, H. T. Sansom, J. B. Waldrop, E. D. Cooper, and A. A. Robins, to recover upon two promissory notes mentioned and described in the bill.

The bill alleged that on September 20, 1920, complainant sold and delivered to defendants and the Farmers'

Lummus Cotton Gin Co. v. Arnold.

Co-operative Gin Company (a corporation), with its office and place of business located at Pinson, in Madison county, Tenn., one 3/80 Saw Lummus automatic air blast ginning outfit complete; that the consideration for said sale was the sum of $7,539.39, one-third of which was paid in cash; that two notes for the sum of $2,513.13 each, representing the remainder of the purchase price of said machinery, were executed and delivered by defendants and the Farmer's Co-Operative Gin Company to complainant; that one of said deferred purchase-money notes matured and became due and payable January 1, 1921, and the other January 1, 1922, that the sum of $1,300 had been paid on the note that matured January 1, 1921, but that nothing had been paid on the other note; that both of said notes contained a provision for the payment of ten per cent. attorney's fees in the event same were not paid at maturity and were collected by an attorney; that the amount then due complainant on said two notes was $3,726.20, principal and interest and attorney's fees.

The bill alleged that numerous demands had been made upon defendants for the payment of the balance due on said notes, which were long past due, but defendants had failed and refused to pay said balance. The bill further alleged that said ginning outfit was sold to the defendants and the Farmers' Co-Operative Gin Company under and pursuant to a certain conditional sales contract, by the terms of which the title to said machinery was retained by complainant until the deferred purchase-money notes should be fully paid; that the Farmers' Co-Operative Gin Company had been adjudged a

bankrupt by the District Court of the United States for the Eastern Division of the Western District of Tennessee; that complainant had filed a petition in said bankruptcy proceeding, setting forth that said ginning outfit, which was scheduled as an asset of the Farmers' Co-Operative Gin Company, was sold under a conditional sales contract, and alleging that it was entitled to repossess itself of said machinery and sell the same to satisfy the balance due on the purchase price, or to have the trustee in bankruptcy sell the same and apply the proceeds on said notes; that said machinery had been sold by the trustee in bankruptcy, but that no disposition had been made of the proceeds of said sale; that the amount realized from the sale of said ginning outfit by the trustee in bankruptcy would be shown in the proof.

The prayer of the bill was for a decree against defendants for the amount due on said notes, with interest and attorney's fees, less such sum as might be realized from a sale of the property by the trustee in bankruptcy, and for general relief.

Defendants answered the bill. In their answer they set up the following defenses:

(1) They denied that complainant had qualified to do business in Tennessee.

(2) That defendants signed the contract for the sale and purchase of said ginning outfit and the notes sued on in the capacity of directors of the Farmers' Co-Operative Gin Company only, and did not intend to become personally liable on said notes. The answer averred that it was expressly understood between defendants and complainant's agent, at the time they signed the con-

tract for the sale and purchase of said ginning outfit and the notes sued on, that they were not to be personally liable on said contract and notes.

(3) That said notes, in so far as defendants were concerned, were without consideration, and defendants were not liable thereon.

On the hearing had upon the pleadings and proof, the -chancellor dismissed complainant's bill and taxed it with the costs of the cause. From this decree complainant appealed to this court and has assigned errors.

Through its first, second, third, fourth, and fifth assignments of error it is urged that the chancellor committed error in admitting, over the objection of complainant, evidence offered by defendants to the effect that it was expressly agreed and understood between complainant's agent and defendants, at the time the latter signed said contract to purchase said ginning outfit and the notes sued on, that they were not to be personally liable on said contract and notes; that this action of the chancellor was erroneous for the following reasons:

(a)    Said evidence was irrelevant and immaterial.

(b)    That said evidence could not be heard to alter, vary, or contradict the terms of the written contract and notes signed by said defendants. Therefore defendants' exceptions to same should have been sustained and said evidence excluded.

Though its sixth assignment of error it is urged by complainant that the chancellor committed error in dismissing complainant's bill and taxing it with the costs of the cause, because there was no competent evidence in the record to the effect that there was an agreement

that defendants should not become personally liable on the contract and notes sued on; that the notes and contract upon which plaintiff's action is predicated cannot be altered, varied, or contradicted by parol evidence; that defendants are estopped, by reason of the written contract, to set up or rely upon any alleged verbal agreement which they claimed to have had with the agent of complainant who solicited the contract.

Through its seventh assignment of error complainant insists that the chancellor erred in not holding that complainant was a corporation chartered and organized under the laws of the State of Georgia, and in not holding that defendants were estopped to deny complainant's corporate existence, because complainant's corporate existence was properly proved, and the evidence shows that defendants dealt and contracted with complainant as a corporation.

Through its eighth and ninth assignments of error complainant insists that the chancellor erred in holding that there was competent or material evidence introduced to show that complainant had not domesticated or complied with the statutes of Tennessee requiring foreign corporations to file an abstract of their charters with the secretary of State before they can become qualified to do business in Tennessee.

Through its tenth assignment of error complainant insists that the chancellor erred in not holding that the transaction forming the predicate of complainant's suit was an interstate transaction, and that it was not necessary for complainant to qualify to do business in this State before entering into said contract with defend-

ants, and in not granting complaiant a decree against defendants for the amount found to be due upon the notes sued on, including interest and attorney's fees.

These are, in substance, the contentions of complainant made in this court.

We are of the opinion that it is not necessary to determine the question of whether the chancellor committed error in admitting, over the objection of complainant, parol evidence tending to show that it was expressly agreed and understood between defendants and complainant's agent, at the time they signed the sales contract and the notes sued on, that they were not to become personally liable on said contract and notes, and that they signed the same as directors only, by agreement with complainant's agent, to show the good faith of the corporation, Farmers' Co-operative Gin Company, the purchaser of said ginning outfit or machinery. We think complainant must be repelled upon the ground that it is a foreign corporation, and had not, at the time of said transaction, complied with the provisions of the Acts of 1891, chapter 122, and the Acts of 1877, chapter 31, prescribing the terms upon which foreign corporations may transact business in this State. These acts require that any foreign corporation, desiring to own property or carry on business in this State, of any kind or character, shall first file in the office of the Secretary of State a copy of its charter.

Defendants' answer expressly denied that complainant had complied with these statutes at the time of the sale of the machinery in question, and at the time of the execution of the notes sued on. This being true, if the

transaction were an intrastate State one, the burden of proof rested upon complainant to show that it had complied with the statutes above mentioned. Of course, if it were an interstate transaction, then said statutes are not applicable, but complainant is protected under the interstate commerce clause of the federal Constitution.

There is no evidence in the record which tends to show that complainant had complied with the statutes above referred to requiring foreign corporations, desiring to carry on business in this State, to first file in the office of the secretary of State a copy of their charters. Therefore we must inquire and determine whether the transaction, out of which the execution of the notes sued on grew, was an interstate transaction. It it were not, then, under our decisions, complainant cannot ask the courts of this State to enforce its contract with defendants and must be repelled.

We think the facts show that the sale and delivery of said ginning outfit or machinery by complainant to the Farmers' Co-Operation Gin Company, a corporation of which defendants were directors, was an intrastate State transaction.

It has been held repeatedly by this court that a foreign corporation which does not comply with the Acts of 1877, chapter 31, and the Acts of 1891, chapter 122, cannot maintain an action arising out of business transacted within the State. *Amusement Company* v. *Albert,* 128 Tenn., 419, 161 S. W., 488; *Cary-Lombard Lumber Company* v. *Thomas,* 92 Tenn., 587, 22 S. W., 743; *Harris* v. *Water & Light Company,* 108 Tenn., 245, 67 S. W., 811; *Louisville Property Company* v. *Nashville,* 114

Tenn., 213, 84 S. W., 810; *Lumber Company* v. *Moore,* 126 Tenn., 313, 148 S. W., 212; *Heating & Ventilating Company* v. *McKnight & Merz,* 140 Tenn., 563, 205 S. W., 419.

In *Amusement Company* v. *Albert,* supra, it was held that a foreign corporation is doing business within the State when it transacts therein some substantial part of its ordinary business, and its operations within the State do not consist of mere casual or occasional transactions.

Complainant insists that the contract for the sale of the machinery in question to the Farmers' Co-Operative Gin Company was an interstate commerce transaction because the contract expressly provided that it was subject to acceptance by the complainant at its home office in Columbus, Ga.; that the undisputed evidence showed that the contract or order was forwarded to complainant at its home office in Columbus, Ga., by its agent who negotiated the contract or order; that it was accepted by complainant at its home office, and said machinery was shipped from the manufacturing plant of complainant in Columbus, Ga.

It was held by this court in *Lloyd Thomas Company* v. *Grosvenor,* 144 Tenn., 347, 233 S. W., 669; that a contract to appraise property in Tennessee, and which was made in Tennessee by an Illinois corporation, but the contract provided that before becoming valid it must be approved by the Illinois corporation at its office in Chicago, was not a Tennessee contract, but an Illinois contract, and, this being true, the service to be performed by complainant in that case was not an intra-

state transaction. In that case, however, no part of the service called for by the contract was to be performed in Tennessee, nor was any part of it performed in Tennessee. The service contracted for by the Illinois corporation in that case was to be performed in the State of Arkansas.

The contract under consideration in the instant cause provided that complainant should, through its' agent, superintend the erection of said ginning machinery in a house to be erected and furnished by the Farmers' Co-Operative Gin Company at Pinson, Tenn., and that complainant should be paid for the services of such agent at the rate of $5 per day from the time he left the factory until his return, and that the purchaser should also pay his traveling expenses and his board while engaged in superintending the erection of said machinery. It appears that complainant, through its agent, did superintend the erection of its machinery in the gin house prepared by the purchaser at Pinson, Tenn., and it required about one week to erect said machinery. It also appears from the undisputed evidence that said machinery was not of such complicated character as to render it necessary for complainant to furnish an agent from its factory to superintend its erection, but that said machinery could have been erected by any mechanic who could read and understand blueprints and drawings. The evidence shows that complainant furnished blueprints and drawings of the machinery in question, showing how each piece of machinery should be installed, and the secretary and treasurer of complainant testified that complainant always furnished such blueprints and drawings

for the installation of machinery sold by it. He further testified that complainant only superintended the erection of its ginning outfits where the purchaser contracted for it, and that in many cases it sold the machinery without contracting to furnish some one to superintend its erection. He further testified that the sending of a man to superintend the erection of the machinery at the expense of the customer was merely for the convenience of the customer, and depended on whether or not the customer desired such service; that complainant frequently made sales of ginning outfits that were shipped direct to the customer and installed by the customer without the aid of any agent of complainant; that outfits were sold and shipped to Peru, Africa, and Australia, and various foreign countries, without any contract that complainant should superintend the erection of said machinery.

Furthermore, it appears that, at the time of the transaction in question, complainant maintained a branch office in the city of Memphis, Tenn., which was in charge of a district sales manager, and had done so for several years. It also maintained a plant at Binghampton, Tenn., where it kept a complete ginning outfit set up and installed, and used the same for demonstration purposes. This plant was located on property owned by complainant. At the Binghampton plant it also kept a complete stock of repairs for the ginning machinery sold by it, and sold and delivered these repairs to customers from the Binghampton plant; the orders for repairs from customers in Tennessee being received directly at the Memphis office, and such orders filled from the stock maintained at the Binghampton plant.

At the Binghampton plant it maintained and operated a shop for the repair of the ginning machinery operated by its customers. In this shop it maintained and operated a saw sharpener, and sharpened gin saws for its customers. Owners of gin saws in Tennessee, without regard to whether they were from gins sold by complainant or not, desiring to have such saws filed or sharpened, would send them to complainant at Memphis, and complainant would file and sharpen said saws at its shop in Binghampton, and return the same to the owners, charging them a stipulated price for said service.

It appears from the evidence that, after the sale of the machinery involved in this cause, the Farmers' Co-Operative Gin Company, on several occasions, ordered and purchased from complainant's branch office at Memphis, Tenn., repairs for certain machinery, which was shipped by complainant from its Binghampton plant to the Farmers' Co-Operative Gin Company at Pinson, Tenn.; said orders being sent directly to the Memphis branch.

It also appears that, in negotiating the sale of the machinery in question, one of the inducements to purchase held out by complainant to the Farmers' Co-Operative Gin Company was the fact that it maintained and kept a stock of repairs at its Binghampton plant in Tennessee, from which, in case of a breakdown in its machinery, it could obtain the necessary parts to replace those which had broken without delay, and without the necessity of ordering from the factory in Georgia.

Complainant also kept a stenographer at its sales office in Memphis, and mechanics at its Binghampton plant,

who sharpened gin saws, etc., for customers. It also had three salesmen traveling from its branch office at Memphis, taking orders for machinery, and the expenses of these salesmen were kept in the Memphis office. Complainant furnished from its factory the stock of repairs necessary to be kept at its branch office in Tennessee, shipping said stock to said branch office, and settling with said branch office at inventory periods, which was once a year. The collection of accounts owing complainant from its Tennessee customers, and other customers in the Memphis territory, were collected by complainant's branch office at Memphis.

One of the purposes for which complainant was organized, as shown by its charter, was to manufacture, buy, sell, and repair machinery and its parts.

We think the foregoing facts show that complainant was engaged in the prosecution of a material portion of its ordinary business in this State, and that the carrying on of such business rendered in amenable to the Acts of 1891, chapter 122, and the Acts of 1877, chapter 31. *Browning* v. *Waycross*, 233 U. S. 16, 34 S. Ct., 578, 58 L. Ed. 828. In that case it was held that, where a foreign corporation sold lightning rods to a resident of Georgia, with an agreement to install them on the house of the purchaser, this was not an interstate commerce transaction; that the matter of installation was a doing business within the State, it not appearing that it was an essential and necessary part of the sale of the particular machinery that the seller should install it. See, also *Palm Vacuum Cleaner Co.* v. *Bjornstad*, 136 Minn. 38, 161 N. W., 215, L. R .A., 1917C, 1012, and notes

thereto. The cases cited in the note to the case last cited show that the rule stated in *Browning* v. *Waycross* has been very generally followed.

To the same effect is the holding of this court in *Heating & Ventilating Company* v. *McKnight & Merz,* supra.

Complainant relies chiefly on the case of *York Manufacturing Company* v. *Colley,* 247 U. S., 21, 38 S. Ct., 430, 62 L. Ed., 963, 11 A. L. R., 611. The facts of that case are easily distinguishable from the facts in the cause at bar. The contract in that case was for the sale of an ice plant, consisting of many and complicated parts enumerated in the opinion of the court, to be shipped from a point in Pennsylvania to a point in Texas, and erected by the seller, and it also provided that the seller, in addition to erecting the plant and installing the machinery, should practically test its efficiency before the contract was completed. In other words, the installation of the plant, and the practical test of it after it was installed, was essential to the completion of the contract of sale.

The court, in holding that the erection and installation of the machinery under these circumstances did not deprive the transaction of its interstate character, emphasized the fact that the intrinsic value of the machinery there in question largely depended upon its being united and made operative as a whole, and that, on account of its complexity, it was essential to its sale that it be erected by an expert from the factory. That case does not hold that, where the article sold in interstate commerce is not of such a complex character that installation by the seller is essential to its sale, such in-

stallation will be held to be a part of interstate commerce.

In the cause at bar the obligation of the purchaser to accept the machinery in question did not to any extent depend upon the installation and erection of it by the seller; nor, as shown by the testimony of complainant's secretary and treasurer, Mr. Hollis, was such installation and erection essential to the completion of the interstate transaction. We are of the opinion, therefore, that the case of *York Manufacturing Company* v. *Colley* is not controlling.

It results that the decree of the chancellor will be affirmed with costs.

RESPONSE TO COMPLAINANT'S PETITION TO REHEAR.

Complaintant has filed a petition to rehear in this cause, urging that the court was in error in holding that complainant was not entitled to recover of defendants because it was doing business in Tennessee, and had failed to show a compliance with the statutes relating to foreign corporations. In other words, that the court, in view of the state of the pleadings, committed error in holding that the burden of proof was on complainant to show compliance.

The court held that the facts established by the proof showed that the sale and delivery of the ginning outfit or machinery by complainant to the Farmers' Co-Operative Gin Company, a corporation, of which defendants were directors, was an intrastate transaction; and defendants having denied in their answer that complain-

ant had complied with the statutes relating to foreign corporations, at the time of the sale of the machinery in question, and at the time of the execution of the notes sued on, the burden of proof rested upon it to show compliance.

We concede that this was error. We proceeded upon the theory that complainant's bill, not only alleged that it was a foreign corporation, but that it had qualified to do business in this State. We find, however, upon a reexamination of the record, that complainant's bill does not contain any such allegation. It does allege that complainant is a foreign corporation, but does not allege that it had qualified to do business in this State. The denial in defendants' answer that it had qualified to do business in this State was therefore in the nature of an affirmative plea, and, with chapter 184 of the Public Acts of 1919 out of the way, the burden would have rested upon defendants to prove noncompliance. However, we think the act referred to has changed the rule which existed in this State prior to its passage. Section 1 provides:

"That the secretary of State shall have bound and published with the Public Acts of the present General Assembly a certified alphabetical list of all foreign corporations which shall have filed copies of their charters in his office duly authenticated or certified as required by law, and that such published lists shall show, under appropriate headings, the name of each corporation, the State where chartered, and the date of the filing of a copy of its charter in his office; and that he shall likewise have bound and published with the Public Acts of

each subsequent regular session of the General Assembly, a certified alphabetical list of all such foreign corporations as shall have filed such copies of their charters in his office since the close of the last preceding published list, and that such published lists shall be *prima-facie* legal evidence of the existence of the corporations named therein, and of their having filed their charters in the office of the secretary of State as required by law, and that the courts of this State shall take judicial notice thereof, as they now take notice of the lists of domestic corporations bound and published with the acts of the General Assembly."

Pursuant to that act the secretary of State published with the Public Acts of 1919 a list of all such foreign corporations having complied with the laws of this State, and annexed thereto his certificate under the great seal of the State, which said certificate is in words and figures as follows:

"I, Ike B. Stevens, secretary of State of Tennessee, do hereby certify that the foregoing is an alphabetical list of all foreign corporations which have filed copies of their charters in my office, duly authenticated or certified as required by law, showing the name of each corporation, the State where chartered, and the date of filing a copy of his charter in my office.

"In witness whereof, I hereunto set my official signature and affix the great seal of the State of Tennessee, at office in Nashville, this 1st day of May, 1919.

"[Signed] IKE B. STEVENS,

"Secretary of State."

Similar lists were published and certified according to law by the secretary of State under the great seal of the State with the Public Acts of 1921 and 1923. In none of these lists does the name of complainant appear.

The contract out of which the present suit grew is dated May 7, 1920. The notes sued on were dated September 20, 1920. Complainant's bill was filed October 10, 1922.

In *Dunlap* v. *Sawvel*, 142 Tenn., 707, 223 S. W., 145, this court said: "It is a well-established law in Tennessee that (the presumption is that) every sworn officer does his duty, and in the absence of proof to the contrary this presumption will prevail"—citing *Rogers* v. *Jennings*, 3 Yerg., 308; *Loyd* v. *Anglin*, 7 Yerg., 428, 431; *Mitchell* v. *Lipe*, 8 Yerg., 179, 29 Am. Dec., 116; *Frierson* v. *Galbraith*, 12 Lea, 129; *State* v. *Myers*, 85 Tenn., 203, 5 S. W., 377.

To the same effect is the rule announced in *Beasley* v. *Smith*, 3 Humph., 406; *Gibson* v. *Martin*, 7 Humph., 127; *Caruthers* v. *Harbert*, 5 Cold., 362, 98 Am. Dec., 421; *Maxwell* v. *Jonesboro, Corp.*, 11 Heisk, 257.

In *Caruthers* v. *Harbert*, supra, it was held that the presumption of law is that a public officer has done his duty correctly (unless some statute or rule requires a particular mode), until the contrary appears.

The presumption is that every sworn officer does his duty, and therefore the recital in a sheriff's deed of land sold by him "that he legally advertised and made known" the time and place of sale is *prima-facie* evidence of the fact of advertising and otherwise making known the sale by notice to the judgment debtor in possession.

*Rogers* v. *Jennings,* supra; *Loyd* v. *Anglin,* supra; *Mitchell* v. *Lipe,* supra.

In the absence of proof to the contrary, it is to be presumed that the official act of an officer in another state has been performed, as required by the law of that state. *Frierson* v. *Galbraith,* supra.

A notary public is a public officer, and, when he certifies that he had done a public act, it must be presumed that he has done it correctly, unless some statute or rule requires a particular mode, until the contrary appears. This presumption may be rebutted, but the burden of proof is upon the one denying its correctness.

In *Chesapeake & Delaware Canal Company* v. *United States,* 153 C. C. A., 593, 240 F., 907, it was held that the fact that the records of the government failed to show payment of certain dividends by the defendant was evidence of the fact that said payment had not been made. In that case the court said:

"As such records are usually made by persons having no motive to suppress or distort the truth or to manufacture evidence, and, moreover, are made in the discharge of a public duty, and almost always under the sanction of an official oath, they form a well-established exception to the rule excluding hearsay, and, while not conclusive, are *prima-facie* evidence of relevant facts. The exception rests in part on the presumption that a public officer charged with a particular duty has performed it properly. As the records concern public affairs, and do not affect the private interest of the officer, they are not tainted by the suspicion of private advantage."

· Mr. Wigmore, in his work on Evidence, vol. 3, section 1633, subsec. 6, p. 391, announces the rule thus: "Since the assumption of the fulfillment of duty is the foundation of the exception, it would seem to follow that, if a duty exists to record certain matters when they occur, and if no record of such matters is found, then the absence of any entry about them is evidence that they did not occur; or, to put it in another way, the record, taken as a whole, is evidence that the matters recorded, and those only, occurred."

In R. C. L., vol. 10, section 332, p. 1125, it is said:

"When persons in public office are required by statute, or by the nature of their office, to write down particular transactions occurring in the course of their public duties and under their personal observation, such records are generally admissible in evidence. When such entries are made by authorized public agents in the course of public duty, and relate to matters in which the whole public may be interested, it is thought that the oath and cross-examination may be dispersed with. Such entries are generally made by those who can have no motive to suppress the truth, or to fabricate testimony. Moreover, in many cases they are made in the discharge of duty, pursuant to an oath of office. And since these are the grounds of admission there seems to be no good reason why the public records of another State or country should not be admitted equally with the records kept by officers within the State; it appearing that the foreign record is kept pursuant to law."

It is expressly provided by the statute above referred to that, when the name of the foreign corporation ap-

pears in the list required to be published by the secretary of State, it shall be *prima-facie* legal evidence of the existence of the corporation named therein, and of its having filed its charter in the office of the secretary of State as required by law, and that the courts of this State shall take judicial notice thereof. While it is true that the statute does not expressly provide that the failure of the name of a foreign corporation to appear in such published list shall be *prima-facie* evidence that it has not filed its charter in the office of the secretary of State as required by law, such is the clear implication of the statute, and such published list would mean nothing unless the statute be so construed.

It would have been wholly unnecessary to have enacted a statute requiring the secretary of State to publish a certified alphabetical list of all foreign corporations which shall have filed copies of their charters in his office duly authenticated, and that such published list shall be *prima-facie* legal evidence of the existence of the corporations named therein, and of their having filed their charters in the office of the secretary of State as required by law, and requiring the courts of this State to take judicial notice thereof, unless it was intended that the failure of the name of a foreign corporation to appear in said list shall be *prima-facie* evidence that it has not filed a copy of its charter in the office of the secretary of State as required by law, because, before the enactment of the statute, in the absence of proof to the contrary, the presumption was that the corporation had complied with our statutes relating to foreign corporations.

The petition to rehear is denied.