## Bradford *v.* State.

*(Jackson,* April Term, 1939.)

Opinion filed May 27, 1939.

KINNEY & NORRIS, of Brownsville, for plaintiff in error.

NAT TIPTON, Assistant Attorney-General, for the State.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

There was a conviction below of possessing liquor, with a fine of $350 and workhouse sentence of six months. Four half pints were found by an officer at one place in Bradford's home and a gallon in another. The officer was armed with a search warrant, the legality of which is challenged on the ground only that it was signed "T. J. Pearson, Justice of the Peace," when said Pearson was not a justice of the peace. It appears from the bill of exceptions that objection was duly made to the testimony of the officer, "because the search warrant under which he acted was nugatory and void, because said T. J. Pearson was not and is not a Justice of the Peace." The bill of exceptions further shows that "the Attorney-General agreed . . . that said T. J. Pearson was not a Justice of the Peace, but was Judge of the County Court

of Haywood County, Tennessee, under Chapter 481, Private Acts of Tennessee of 1933." The trial Court overruled the objection thus made to the validity of the warrant and admitted the testimony. Appealing, his ruling is assigned as error.

██ Section 12 of the Acts of 1933, which creates the office of County Judge for Haywood County, provides "That said County Judge shall have the same jurisdiction to hear and try criminal cases as is granted under the law to justices of the peace." Since Pearson, who issued this search warrant, was the County Judge, and since this Act was within the exercise of the criminal jurisdiction conferred by law on Justices of the Peace, the warrant was, in fact, signed and issued by an official lawfully empowered to perform this judicial function. It is obvious that in providing that the County Judge should have the same jurisdiction to "hear and try criminal cases" as have justices of the peace, the Legislature intended to include jurisdiction to issue all process incidental to the exercise of such jurisdiction.

██ ██ The question narrows, therefore, to whether or not this judicial officer invalidated his process by placing under his signature (or leaving there as printed on a form) the words "Justice of the Peace." It will be conceded that this insistence is highly technical. It can hardly be maintained that this title-misnomer goes to the merits, in any degree violates the intent of our statutes requiring a searching officer to be provided with a warrant issued by a properly authorized judicial officer. The warrant was, *in fact,* issued by such a judicial authority, and the searching officer knew this to be the fact. Courts look thru forms to substance. When the rights of the citizen are thus fully protected, such a minor mistake in

matter of form only should not be permitted to defeat justice. So that, on principle, such a misnomer should be disregarded. The *identity* of the signer of this warrant is conceded. The rule as to misnomer in corporate deeds has application, by analogy. "The general concurrence of modern authority is to the effect that a misnomer or variation from the precise name of a corporation in a grant or obligation by it or to it is not material if the identity of the corporation is unmistakable, either from the face of the instrument or from proof and averments." *Precious Blood Society* v. *Elsythe,* 102 Tenn., 40, at page 45, 50 S. W., 759, at page 760, citing numerous authorities, and see *Bank* v. *Burke,* 41 Tenn. (1 Cold.), 623.

We are cited to no case passing on such an irregularity in a search warrant, but we have a number of decisions dealing with irregularities in the signing of indictments, the rule being that the Courts take judicial notice of the proper officer to prefer indictments; and when it appears he intended to sign officially, will disregard the omission of any, or the adding of an improper, official designation, etc. For this rule, Crawford's Tennessee Digest, Volume 4, page 3401, cites *State* v. *Myers,* 85 Tenn., 203, 5 S. W., 377; *Currey* v. *State,* 66 Tenn. (7 Baxt.), 154, 156; *State* v. *Evans,* 27 Tenn. (8 Humph.), 110, 113; *Greenfield* v. *State,* 66 Tenn. (7 Baxt.), 18, 20.

We find in *Currey* v. *State, supra,* this excellent, concise statement of the rule which it seems to us should be applied here: "We can have no doubt that the John M. Taylor whose name appears to the indictment is the same man that we know to be attorney-general or district attorney for that district, and that his signature to the paper was made in the performance of his official duty

as such officer." Paraphrasing the foregoing, the instant case is covered: We can have no doubt that the T. J. Pearson whose name is signed to the warrant is the man we know to be the County Judge of Haywood County, vested with the essential criminal jurisdiction, "and that his signature to the paper was made in the performance of his official duty as such officer."

Counsel for plaintiff in error relies on a general pronouncement in *Teas* v. *State,* 26 Tenn. (7 Humph.), 174, that "All documents required to be authenticated by the signature of public officers, must be certified by them in their public character."

However, in *State* v. *Myers,* 85 Tenn., 203, 5 S. W., 377, 378, cited by the Attorney-General, the Court declined to approve or follow the broad language of the *Teas Case,* which was pressed upon the Court in the *Myers Case,* saying that even if the officer signing the indictment had employed a designation "unknown to the law, it would not, in our opinion, vitiate the indictment, for the reason that this court will take judicial notice of who was the proper officer to prefer this indictment [here to issue the warrant]; and he need not add his official designation, if it sufficiently appear that he intended his signature to be official; and this may appear from the context"—as it, of course, does here.

The opinion then refers to different cases, among others *Donohoo's Lessee* v. *Brannan,* 1 Tenn. (1 Overt.), 327, where an acknowledgment taken by a Judge was considered and the Court said, disregarding an irregularity in designation of his official character, *"the law will presume the acknowledgment, to have been taken in pursuance of the authority with which 'John M'Nairy'* [here T. J. Pearson] *was clothed at the time the act was*

*done."* We have italicised the foregoing language because it seems to us to express concisely the principle applicable here.

In conclusion, we quote from the opinion in the *Myers Case* the following comment on the *Teas Case*:

"It is true that this does not harmonize altogether with *Teas* v. *State*, 26 Tenn. (7 Humph.), 174, but we need only say of this case what Judge COOPER, in the appendix to his edition of Cooke's Reports, has said—that it is a decision which it is difficult to reconcile with those mentioned above; for, if the court can take judicial knowledge of the incumbent, the misdescription is mere surplusage. The judicial knowledge of the court ought, it would seem, to cure formal defects and omissions; otherwise it is knowledge to little purpose."

■ ■ Complaint is made that the State was permitted to introduce and examine Judge Pearson. This was on the motion for a new trial only and the matter brought out was immaterial to the issues. No prejudice resulted. The rule applied in *Harvey* v. *State*, 166 Tenn., 227, 60 S. W. (2d), 420, that the verity of a magistrate's record cannot be impeached even by the magistrate himself, was not violated. This Court takes judicial knowledge of the material fact in the instant case.

Affirmed.